BARNABY HORTON ET AL. *v.* THOMAS J. MESKILL ET AL.

PETER D. GRACE ET AL. *v.* THOMAS J. MESKILL ET AL.

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

188

Argued December 10, 1981—decision released May 25, 1982

*Gregory M. Harris,* for the appellants (applicants for intervention, town of Killingly et al.).

*Paul W. Orth,* with whom was *Austin Carey, Jr.,* for the appellants (applicants for intervention, town of North Haven et al.).

*Susan W. Wolfson,* for the appellants (applicants for intervention, city of New Haven et al.).

*Robert W. Garvey,* assistant attorney general, with whom were *Charles A. Overend,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellees (defendants).

*Wesley W. Horton* and *Naomi A. Plakins* appeared for the appellees (plaintiffs).

SPEZIALE, C. J.  This is a consolidated appeal from the trial court's denial of three motions to intervene in this case.  The appellants (hereinafter

the applicants) are: the towns of Killingly and Putnam and their boards of education (Killingly and Putnam); the towns of North Haven, Orange, Woodbridge, Avon, Farmington, Fairfield, and Westport (Suburban Municipalities); and the city of New Haven and its board of education (New Haven).[1] The applicants claim that the denial of their motions to intervene was erroneous because: (1) they had a right to intervene, and (2) assuming their intervention was permissive and not of right, the trial court abused its discretion by denying the motions.[2] We find no error.

The underlying action in which the applicants have attempted to intervene was filed originally in November, 1973 and challenged the constitutionality of the statutory provisions governing the financing of Connecticut's secondary and elementary schools. The Superior Court, *Rubinow, J.,* found that the then existing statutory financing system violated the Connecticut constitution's guarantees of equal protection and free public education. *Horton* v. *Meskill,* 31 Conn. Sup. 377, 386–89, 332 A.2d 113 (1974). The Superior Court rendered only a declaratory judgment at that time, retained jurisdiction for additional relief, but stayed further action until the legislature had an opportunity to address the need for a new method of financing secondary and elementary education. Id., 391. On appeal, we found no error in the judgment and approved the

[1] The appellees are the original state defendants including the governor, the treasurer, the comptroller, the commissioner of education, and the members of the state board of education and the original plaintiffs.

[2] The various applicants have also claimed certain other errors; however, in view of our resolution of the principal claims of error, it is unnecessary for us to address those claims.

Superior Court's stay of further relief pending legislative action. *Horton* v. *Meskill,* 172 Conn. 615, 648–53, 376 A.2d 359 (1977) *(Horton I)*.

The General Assembly adopted responsive remedial legislation in 1979 which provided for a new financing equalization formula to be phased in over a five year period. Public Acts 1979, No. 79-128 (hereinafter P.A. 79-128). The original plaintiffs did not challenge the constitutionality of P.A. 79-128. During 1980, the General Assembly twice amended P.A. 79-128. See Public Acts 1980, Nos. 80-404 and 80-473. The plaintiffs apparently viewed the 1980 amendments as receding from the basic remedial legislation because on May 9, 1980, under the Superior Court's retained jurisdiction, they sought and obtained an order to show cause why the defendants should not be enjoined from distributing education funds in an unconstitutional manner. No hearing has yet been held on this order to show cause.

On May 30, 1980, motions to intervene were filed by the towns of Darien and Greenwich and by the city of Hartford and its board of education. These motions to intervene were granted by the trial court on July 1, 1980.[3] Various other motions for permission to participate as amici curiae were also granted by the trial court.[4] The trial court denied the defendants' motion to dismiss the order to show cause on October 7, 1980.

On December 3, 1980, Killingly and Putnam moved to intervene as plaintiffs. The Suburban Municipalities moved to intervene as defendants on

---

[3] These two motions, which are not part of this appeal, were considered by Judge Parskey.

[4] We note that Killingly and Putnam were granted permission by the trial court to participate as amici curiae on January 14, 1981.

the same date. On December 8, 1980, New Haven moved to intervene as a plaintiff. All three motions were denied by the trial court and the applicants for intervention appealed to this court. These appeals were consolidated by this court on March 12, 1981.

## I

### INTERVENTION OF RIGHT

The applicants contend that the trial court erred in denying their motions to intervene because they had a right to intervene. The applicants rely upon § 99 of the Practice Book which provides in relevant part: "If a person not a party [to a controversy before the court] has an interest or title which the judgment will affect, the court, on his [or her] motion, *shall* direct him [or her] to be made a party."[5] (Emphasis added.) The applicants contend that this language provides for intervention of right and that they qualify for such intervention. We agree with the applicants that § 99 of the Practice Book provides for intervention of right; however, we do not agree that the applicants are entitled to such intervention.

The distinction between intervention of right and permissive intervention, such as is found in Rule 24 of the Federal Rules of Civil Procedure, has not

---

[5] Practice Book § 99, which is identical to General Statutes § 52-107, provides in full:

"Sec. 99. —ADDITIONAL PARTIES SUMMONED IN BY COURT

The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his [or her] motion, shall direct him [or her] to be made a party. (See Gen. Stat., § 52-107 and annotations.)"

been clearly made in Connecticut practice. See Practice Book §§ 99, 100.[6] Most of our cases discuss the admission of new parties as coming within the "broad discretion" of the trial court. E.g., *Manter* v. *Manter*, 185 Conn. 502, 507, 441 A.2d 146 (1981); *Jones* v. *Ricker*, 172 Conn. 572, 575n, 375 A.2d 1034 (1977); *Nikitiuk* v. *Pishtey*, 153 Conn. 545, 555, 219 A.2d 225 (1966). But there are also cases which make clear that intervention of right exists in Connecticut practice. *Ricard* v. *Stanadyne, Inc.*, 181 Conn. 321, 322n, 435 A.2d 352 (1980); *Greenwich Gas Co.* v. *Tuthill*, 113 Conn. 684, 695, 155 A. 850 (1931); *Bucky* v. *Zoning Board of Appeals*, 33 Conn. Sup. 606, 608, 363 A.2d 1119 (1976); *DeFelice* v. *Federal Grain Corporation*, 12 Conn. Sup. 199, 201 (1943). The nature of the right to intervene in Connecticut, however, has not been fully articulated. Where state precedent is lacking, it is appropriate to look to authorities under the comparable federal rule, in this case Rule 24 of the Federal Rules of Civil Procedure.[7]

---

[6] Practice Book § 100 provides: "Except as provided in Secs. 157 and 198 no action shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in, and parties misjoined may be dropped, by order of the court, at any stage of the cause, as it deems the interests of justice require." See also General Statutes § 52-108.

[7] Rule 24 of the Federal Rules of Civil Procedure provides: "Rule 24. INTERVENTION

"(a) INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"(b) PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2)

In this case the trial court rejected the applicants' claim for intervention of right "because the intervention was not sought in a timely fashion at an earlier stage of the proceedings" and, therefore, treated their motions as addressed to the discretion of the court. The court considered the motions as untimely because they were filed long after the trial court had rendered its declaratory judgment in 1974. See *Manter* v. *Manter,* supra, 507.

Any motion for intervention, whether permissive or of right, must be timely. See Fed. R. Civ. Proc. 24. The timeliness of a motion for intervention, however, must be judged by all of the circumstances of the case. See *NAACP* v. *New York,* 413 U.S. 345, 366, 93 S. Ct. 2591, 37 L. Ed. 2d 648 (1973); *Hodgson* v. *United Mine Workers of America,* 473 F.2d 118, 129 (D.C. Cir. 1972). In any event, an untimely motion for intervention of right is not transformed automatically thereby into a motion for permissive

when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

"(c) PROCEDURE. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of the United States gives a right to intervene. When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action to which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in Title 28, U.S.C., § 2403."

intervention. The right to intervene is lost, not merely weakened, if it is not exercised in a timely fashion. *Ricard* v. *Stanadyne, Inc.* supra, 323–24. See 7A Wright & Miller, Federal Practice and Procedure § 1916; 3B Moore, Federal Practice § 24.13 [1]. As a general matter, the timeliness requirement is applied more leniently for intervention of right than for permissive intervention because of the greater likelihood that serious prejudice will result. See *Alaniz* v. *Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir.), cert. denied, 439 U.S. 837, 99 S. Ct. 123, 58 L. Ed. 2d 134 (1978); *Diaz* v. *Southern Drilling Corporation,* 427 F.2d 1118, 1126 (5th Cir. 1970).

In this case, the trial court expressed valid concerns about the timeliness of the applicants' motions for intervention. The interests which the applicants now claim are threatened by the impending judgment of necessity must have been equally threatened when this action was initiated in 1973.[8] The applicants' failure to intervene prior to the judgment rendered in 1974 would suggest that they have not moved to protect their claimed interests in a timely fashion. See *Stallworth* v. *Monsanto Co.,* 558 F.2d 257, 263–66 (5th Cir. 1977). There is merit, however, to the applicants' claim that, although the present proceeding is technically a continuation of the original action, it is effectively a new action because it concerns the legislation adopted in 1979–1980, not the legislation declared unconstitutional by the Superior Court in 1974. In any event, we need not decide whether under the circumstances of

[8] We note that during the original proceedings in this case public notice was given in the Hartford Courant, the New Haven Register, the Bridgeport Post, the New London Day, and the Waterbury Republican & American, pursuant to an order of the court.

this case the applicants have lost their right to intervene due to their delay in seeking intervention because the applicants never had the right to intervene in the first place.

An applicant for intervention has a right to intervene under Practice Book § 99 where the applicant's interest is of such a direct and immediate character that the applicant " 'will either gain or lose by the direct legal operation and effect of the judgment.' " *Bucky* v. *Zoning Board of Appeals,* supra, 608; *DeFelice* v. *Federal Grain Corporation,* supra, 201; see *Smith* v. *Gale,* 144 U.S. 509, 518, 12 S. Ct. 674, 36 L. Ed. 521 (1892). The applicants do not have such an interest in this case.

There is no question that each of Connecticut's 169 municipalities, as a practical matter, will be affected by the ultimate judgment rendered in this case, as will the state's taxpayers and students. But a person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him, her, or it. The judgment to be rendered must affect the proposed intervenor's direct or personal rights, not those of another. In this case the rights at stake are the *students'* constitutional rights to equal protection and free public education. *Horton I,* supra, 648–49. The state's duty to provide education is owed to the students, not the municipalities. Although the state has chosen to delegate aspects of this duty to the municipalities, the municipalities do not thereby obtain rights against the state, except as provided by statute. See *Horton I,* supra, 647–48. To the extent that a municipality gains or loses educational funds under the ultimate judgment, it is the students' rights which are

affected, not the municipality's. A municipality obviously has an interest in protecting the rights of its students, but such an interest is not sufficient to give the municipality the *right* to intervene in this case.

That the applicants for intervention in this case do not have a sufficient direct or personal interest to qualify for intervention of right is further demonstrated by the limitations on any intervening municipality's participation in this action. On the one hand, as a creation of the state, a municipality may not challenge the constitutionality of the state's laws. *Berlin* v. *Santaguida,* 181 Conn. 421, 424–25, 435 A.2d 980 (1980); *Waterford* v. *Connecticut State Board of Education,* 148 Conn. 238, 245, 169 A.2d 891 (1961); *Sanger* v. *Bridgeport,* 124 Conn. 183, 190, 198 A. 746 (1938); see *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 115, 425 A.2d 576 (1979); *Hillier* v. *East Hartford,* 167 Conn. 100, 107–108, 355 A.2d 1 (1974); *Tough* v. *Ives,* 162 Conn. 274, 291–92, 294 A.2d 67 (1972); *Ducharme* v. *Putnam,* 161 Conn. 135, 137–39, 285 A.2d 318 (1971), for an exception to this rule not relevant here. On the other hand, although an intervening municipality is not barred from defending the constitutionality of the financing system, such an interest could never justify intervention in a case such as the present one where the constitutionality of the statute is being defended directly by the state as represented by the attorney general. In such a situation, the defense of the statute must be presumed to be adequately conducted by the original defendants.

We conclude that the trial court did not err in rejecting the applicants' claim that they have a right to intervene in this case.

## II

### PERMISSIVE INTERVENTION

Although the applicants do not have a sufficient direct or personal interest in this case to qualify for intervention of right, they appear to have sufficient interest upon which to base a request for permissive intervention. See Practice Book §§ 99, 100; cf. Fed. R. Civ. Proc. 24 (b). Such intervention, of course, is a matter entrusted to the discretion of the trial court. *Manter* v. *Manter,* supra, 507; *Jones* v. *Ricker,* supra, 575n; *Nikitiuk* v. *Pishtey,* supra, 555. The applicants contend that the trial court abused this discretion by denying their motions to intervene.

The consideration of permissive intervention involves numerous factors including the timeliness of the intervention, the proposed intervenor's interests in the controversy, the adequacy of representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court. See Fed. R. Civ. Proc. 24 (b). A ruling on a motion for permissive intervention would be erroneous only in the rare case where such factors weigh so heavily against the ruling that it would amount to an abuse of the trial court's discretion.

Each of the 169 municipalities in Connecticut has the same type of interest in this case, though their views presumably would differ depending on whether they stand to lose or gain under court

ordered equalization. Thus, although each munici-
pality has sufficient interest to seek permissive
intervention, it clearly would not be an abuse of
discretion for the trial court to refuse any massive
intervention because of the delay and unneeded
complexity that so many parties would entail. *In
re Application of Ferris,* 56 Conn. 396, 399 (1888).
The question here is whether the trial court abused
its discretion by denying the motions for interven-
tion by these particular applicants.

The trial court, in ruling on the applicants'
motions, concluded that the applicants' participa-
tion was not necessary to an adequate resolution
of the pending dispute. We agree. As noted pre-
viously, the municipality is basically precluded
from participating on either side in the court's
consideration of the constitutionality of the present
legislative financing system. The role a party
municipality (and those participating as amici
curiae) would play in these proceedings is to aid
the court in determining appropriate relief in the
event the legislative financing system is found to be
unconstitutional.

The trial court, faced with making the difficult
and complex decisions required by this case, is the
best judge of the need for additional parties.
Although the granting of these motions would not
have been an abuse of discretion, in view of the
limited interests of the applicants in the present
proceedings, the lateness of their attempt to inter-
vene, the apparent delay this attempted interven-
tion has already caused in the proceedings, and the
numerous parties (and amici curiae) before the
court already representing most if not all of the

spectrum of interests present in this case, we cannot say that the trial court abused its discretion by denying the applicants' motions for intervention.

There is no error.

In this opinion the other judges concurred.