POLYMER RESOURCES, LTD., ET AL. *v.* TIMOTHY R. E.
KEENEY, COMMISSIONER OF ENVIRONMENTAL
PROTECTION
(11668)

DUPONT, C. J., HEIMAN and SCHALLER, Js.

Argued May 10—decision released August 3, 1993

*Charles L. Howard,* with whom, on the brief, were *William O. Riiska* and *Gregory T. D'Auria,* for the appellants (Farmington Residents for a Clean Environment).

*Christopher J. Smith,* with whom, on the brief, were *Stuart A. Epstein* and *Stewart I. Edelstein,* for the appellees (plaintiff).

*Kimberly P. Massicotte,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Joseph Rubin, Robert B. Teitelman* and *Grace M. Dodier,* assistant attorneys general, for the appellees (defendants).

HEIMAN, J. Farmington Residents for a Clean Environment (FRCE)[1] appeals from the trial court's denial of its motion to be granted status as a party in this action brought by the named plaintiff Polymer Resources, Ltd. (Polymer),[2] against the commissioner of environmental protection. In its complaint, Polymer sought injunctive relief arising out of a claim that the defendant was attempting to impose conditions on the operation of Polymer's manufacturing plant in excess of those imposed in a decision and order rendered by the defendant, and, further, that the defendant, acting under color of state law, violated Polymer's rights, privileges and immunities as secured by the constitution and laws of the state of Connecticut.[3]

[1] FRCE is a group of approximately 300 people who share a Farmington neighborhood with the named plaintiff Polymer Resources, Ltd.

[2] The other plaintiff in this action is Leslie M. Klein who is chairman of Polymer's board of directors, its sole shareholder, and owner of the land where the facility is located. For purposes of this appeal, Polymer Resources, Ltd., and Klein will be referred to collectively as Polymer.

[3] While the dissent asserts that an administrative appeal would have "sought the same objective," we point out that this is not the method

On appeal, FRCE posits that the trial court acted improperly (1) in denying its motion to intervene pursuant to General Statutes § 22a-19 (a), (2) in denying its motion to intervene as of right, and (3) in denying its motion to intervene under permissive standards. We affirm the trial court's denial of FRCE's motion for party status.

The following facts are necessary to a resolution of this appeal. Polymer operates a manufacturing facility in the town of Farmington at which it produces plastic pellets. This facility has been the subject of numerous complaints based on claims of air pollution by emission of allegedly noxious odors.

On February 3, 1992, the defendant issued administrative compliance order No. 1222 requiring Polymer to cease emissions from its facility. The defendant claimed that the emissions caused or contributed to the offensive odor. The commissioner ordered Polymer to prepare a report and to perform remedial actions to abate the odors.[4]

On February 13, 1992, Polymer's representatives met with the commissioner's representative and agreed on a remedial plan in accordance with the administrative compliance order. The plan provided that Polymer would install additional air pollution control equipment, conduct stack testing, and submit reports to the com-

selected by the plaintiff. In Connecticut, we have long held to the theory that a party is entitled to plead its case as it wishes. "[T]he party [should be] permitted to put his case before the court in his own way, rather than in that which his antagonist might prefer." *Burritt* v. *Lunny,* 90 Conn. 491, 495, 97 A. 756 (1916).

[4] Polymer filed an administrative appeal of the order and requested a hearing. The hearing was held on June 3, 1992. At that hearing, the town of Farmington and FRCE were permitted to intervene as parties. At the hearing Polymer and the commissioner agreed to a consent order whereby Polymer agreed to cease emitting the substances that create or contribute to the odor.

missioner. Polymer ordered and installed additional air pollution control equipment. To install the equipment, Polymer ceased operations at its facility on April 9, 1992.

On that same day, the commissioner issued administrative compliance order No. 1270 compelling Polymer to cease operations at its facility, to install the agreed on air pollution control equipment, to submit a plan for stack testing, and to submit a report to the commissioner certifying that the air emissions from the facility would not result in imminent and substantial damage to the public health. The order provided that Polymer shall not be in full compliance with the order until all actions required by the order are completed and Polymer otherwise completely and permanently ceases the emissions of all substances that are likely to result in imminent and substantial damage to public health. Order No. 1270 also provided that the commissioner may approve of the document, report, or other action as submitted or performed with such conditions or modifications as the commissioner deems necessary to carry out the purposes of the order.

On April 16, 1992, an administrative hearing officer commenced a hearing pertaining to order No. 1270. Both the town of Farmington and FRCE were permitted to intervene in this administrative hearing. Polymer consented to abide by the terms and conditions of the commissioner's administrative compliance order No. 1270 and these terms and conditions were incorporated into the administrative hearing officer's May 1, 1992 decision.

On May 4, 1992, Polymer submitted a proposed final stack testing plan to the commissioner. The commissioner did not act on the plan, but requested that an independent third party expert review Polymer's plan.

He recommended two experts, one of whom Polymer employed to review its plan.

On May 12, 1992, the third party expert modified Polymer's proposed final stack testing plan and submitted it to the commissioner.

On May 14, 1992, the commissioner imposed additional conditions beyond the scope of the administrative hearing officer's final decision and the commissioner's compliance order No. 1270.

Pursuant to the modified stack testing plan, Polymer conducted tests and, on June 22, 1992, submitted a report to the commissioner certifying that air emissions from its facility would not result in imminent and substantial damage to the public health. On June 25, 1992, the commissioner ordered Polymer to cease operations pertaining to the stack testing plan because of the detection of a mild odor in the emission stack outlet. On June 29, 1992, the third party expert submitted its report to the commissioner analyzing the results of its plan for stack testing at Polymer's facility.

On July 2, 1992, the commissioner attempted to impose additional requirements of precontrol stack testing as a condition to Polymer's resumption of stack testing.[5] He justified these conditions by asserting that compliance order No. 1270 contained a provision that Polymer conduct stack testing in a manner approved by him.

In a two count verified complaint, Polymer asserted that the commissioner's actions were "arbitrary, capricious, unreasonable, in excess of his authority, and constitute[d] bad faith and an abuse of discretion" and that the commissioner, acting under the color of state law,

---

[5] Precontrol stack testing is the testing of emissions from manufacturing operations before the emissions have gone through pollution control devices.

had "deprived Polymer of its rights, privileges, and immunities secured by the Constitution and the laws of the State of Connecticut, including Polymer's rights to due process and equal protection as afforded by the Constitution of the State of Connecticut." Polymer sought by way of relief attorney's fees and a temporary and permanent injunction enjoining the commissioner from prohibiting or limiting Polymer's operation at its facility under (1) the commissioner's order No. 1270, (2) the May 1, 1992 terms of the final decision of the administrative hearing officer, (3) the terms and conditions of the commissioner's May 14, 1992 letter to Polymer, (4) terms and conditions of the commissioner's June 25, 1992 letter to Polymer, (5) and the terms and conditions of the commissioner's July 2, 1992 letter to Polymer. It also sought a temporary and permanent injunction restraining the commissioner from compelling Polymer to perform precontrol testing at its facility.

On August 17, 1992, FRCE made a motion for permission to intervene as a matter of statutory or common law right or permissively as a party to the case.[6] It filed a verified pleading regarding intervention and a memorandum in support of its motion for permission to intervene. Polymer filed an objection to FRCE's motion and a memorandum in support of its objection. The court orally denied FRCE's motion.[7] The court

[6] We note that FRCE had participated in the administrative hearings before the administrative hearing officer concerning the commissioner's compliance orders Nos. 1222 and 1270. We also note that the town of Farmington also filed a motion for permission to intervene in Polymer's action. The town, however, did not appeal the trial court's denial of its motion.

[7] In making its ruling denying the town of Farmington's and FRCE's motions, the trial court made the following findings:

"[The Court]: [The Department of Environmental Protection (DEP)], which by statute is charged with the protection, the health, the safety, and the welfare of the state of Connecticut [General Statutes §§ 22a-1a]. And in all

found that the attorney general could adequately protect FRCE's interests.[8] It also found that FRCE did not meet the standards for intervention pursuant to General Statutes § 22a-19 (a), intervention as of right, and permissive intervention. This appeal followed.

I

FRCE asserts that the trial court improperly denied its motion to intervene pursuant to General Statutes

matters, the Commissioner shall act as the agent for the state and any municipality. [General Statutes §] 22a-9.

"So you have specific charges here. And as far as the [claim for intervention under §] 22a-19, that's discretionary. And in all actions brought by the DEP, representation shall be by the Attorney General.

"Now, I would have to find that your client's interest could not be adequately represented by the Attorney General's Office in this case. I cannot find that, and there's no evidence that he could not adequately represent all the applicants' interest[s].

"As to this issue which is—has the Commissioner or has he not exceeded his authority; and certainly—and nothing would prevent you, in representing your clients' interest both of you, by staying in touch with the Attorney General's Office. I'm sure he would like any evidence that is relevant to this issue, and if you present it to the Attorney General and he offers it and it's relevant, it will be heard. But—and in addition to that, as far as— so I think it's this Court's finding, that you do not have a right to intervene.

"Now, as far as permissive intervention; I believe that it would cause delay. And I don't see the necessity of the value of the intervention in terms of resolving the issues before this Court. And, therefore, I'm going to deny the motions to intervene. . . .

"We are talking about a temporary injunction, and I'm anxious, and I think [Polymer's counsel] is anxious—I think everybody is anxious to get this case moving. And that's why I'm ruling from the bench."

Both the town of Farmington's attorney and FRCE's attorney took exceptions to the court's ruling. The court then proceeded to schedule for the following Monday a hearing on Polymer's motion for a temporary injunction.

[8] On April 20, 1993, the trial court granted Polymer's request for a temporary injunction restraining the commissioner from requiring precontrol stack testing and denied a request for temporary injunction to restrain the commissioner from requiring further testing pursuant to other methods, but only if those methods were conducted under specific technical conditions set by the court. On May, 4, 1993, the Chief Justice granted the commissioner's petition for certification pursuant to § 52-265a. That action is pending before our Supreme Court.

§ 22a-19 (a). FRCE posits that the trial court incorrectly found that it had discretion under § 22a-19 (a) to deny FRCE's motion to intervene. FRCE claims that it has an absolute right to intervene on the filing of a verified pleading and complying with the provisions of § 22a-19 (a). We do not agree that the trial court improperly denied FRCE's motion to intervene under this statute.

General Statutes § 22a-19 provides: "(a) *In any administrative, licensing or other proceeding,*[9] *and in any judicial review thereof made available by law,* the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." (Emphasis added.) Pursuant to this statute, a party may intervene in an administrative hearing or judicial review thereof upon filing a verified pleading. The pleading must assert that a proposed activity " 'involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.' " *Burton* v.

---

[9] We note that the general language "other proceeding" follows the specific terms "administrative" and "licensing" proceedings in the statute. "The general terms will be construed to embrace things of the same general kind or character as those specifically enumerated." *State* v. *Russell*, 218 Conn. 273, 278, 588 A.2d 1376 (1991); *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 104 n.31, 612 A.2d 1130 (1992). This rule of construction is frequently referred to as ejusdem generis. *Cheshire Mortgage Service, Inc.* v. *Montes,* supra.

*Dillman,* 27 Conn. App. 479, 480, 607 A.2d 447, cert. denied, 223 Conn. 904, 610 A.2d 178 (1992); *Red Hill Coalition, Inc.* v. *Conservation Commission,* 212 Conn. 710, 715, 563 A.2d 1339 (1989). Intervention in an administrative proceeding or judicial review of that proceeding is for the limited purpose of raising environmental issues. *Red Hill Coalition, Inc.* v. *Conservation Commission,* supra; *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 490, 400 A.2d 726 (1978); *Burton* v. *Dillman,* supra, 482; *Glendenning* v. *Conservation Commission,* 12 Conn. App. 47, 53–54, 529 A.2d 727, cert. dismissed, 205 Conn. 802, 531 A.2d 936 (1987).[10]

Polymer brought an action alleging that the defendant violated its due process and equal protection rights guaranteed by the state constitution and law and that the defendant's actions were arbitrary, capricious, and unreasonable. This is thus a civil rights action by Polymer against the commissioner. This is not an appeal from an administrative hearing or a judicial review of such a hearing. See General Statutes § 22a-19. Section 22a-19 (a) does not provide FRCE with the right to intervene in Polymer's civil rights action. See footnote 10, supra.

The trial court's ruling denying FRCE's motion to intervene is correct, albeit for the wrong reason. *Delfino* v. *Planning & Zoning Commission,* 30 Conn. App. 454, 463, 620 A.2d 836 (1993). The trial court stated that under § 22a-19 (a) it has discretion when to permit a party to intervene. As we have noted, § 22a-19 (a) compels a trial court to permit intervention in an administrative proceeding or judicial

---

[10] General Statutes § 22a-19 (a) also permits any person to initiate an independent declaratory or injunctive action. *Red Hill Coalition, Inc.* v. *Conservation Commission,* 212 Conn. 710, 715, 563 A.2d 1339 (1989); *Connecticut Water Co.* v. *Beausoleil,* 204 Conn. 38, 44–45, 526 A.2d 1329 (1987).

review of such a proceeding by a party seeking to raise environmental issues upon the filing of a verified complaint. The statute is therefore not discretionary. The statute, however, does not provide for intervention in the type of action brought by Polymer. We are not compelled to reverse the trial court's ruling that reached the correct result for the wrong reason. Id.; *Solomon v. Hall-Brooke Foundation, Inc.,* 30 Conn. App. 136, 146, 619 A.2d 866 (1993).

FRCE's claim that the trial court improperly denied its motion to intervene pursuant to General Statutes § 22a-19 (a) is without merit.[11]

## II

FRCE also asserts that the trial court should have allowed it to intervene as of right under general principles of intervention, including Practice Book §§ 99 and 100 and General Statutes §§ 52-102 and 52-107.[12]

---

[11] The dissent does not dispute our conclusion that General Statutes § 29a-19 (a) applies only to actions that implicate environmental and not civil rights actions. The dissent's conclusion appears to rest on its assertion that despite the relief sought by the plaintiffs, they more properly should have taken an appeal from the actions of the agency. We do not agree that we can, by judicial fiat, change the nature of the action.

[12] Practice Book § 99 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his motion, shall direct him to be made a party."

Practice Book § 100 provides: "Except as provided in Secs. 157 and 198 no action shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in, and parties misjoined may be dropped, by order of the court, at any stage of the cause, as it deems the interests of justice require."

General Statutes § 52-102 provides: "Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or (2) shall be made a party by the court if that person is necessary for a complete determination or set-

Although we agree with the applicant that Practice Book § 99 provides for intervention as of right, we do not agree that the applicant is entitled to such intervention.

Practice Book § 99 provides for intervention as of right in Connecticut practice. *Horton* v. *Meskill,* 187 Conn. 187, 191, 445 A.2d 579 (1982); *State Board of Education* v. *Waterbury,* 21 Conn. App. 67, 70, 571 A.2d 145 (1990). "An applicant for intervention has a right to intervene under Practice Book § 99 where the applicant's interest is of such a direct and immediate character that the applicant will either gain or lose by the direct legal operation and effect of the judgment. . . ." (Citations omitted; internal quotation marks omitted.) *State Board of Education* v. *Waterbury,* supra, 71; *Horton* v. *Meskill,* supra, 195; *Common Condominium Assns., Inc.* v. *Common Associates,* 5 Conn. App. 288, 290, 497 A.2d 780 (1985). "[A] person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him, her, or it. The judgment to be rendered must affect the proposed intervenor's direct or personal rights, not those of another." *In re Baby Girl B.,* 224 Conn. 263, 275, 618 A.2d 1 (1992).

The trial court found that the attorney general could adequately represent the interests of FRCE and the

tlement of any question involved therein; provided no person who is immune from liability shall be made a defendant in the controversy."

General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

general public in this matter.[13] Although the resolution of Polymer's civil rights claim might theoretically have an effect on FRCE, FRCE's interest in the impending judgment was not sufficiently direct or personal to require intervention since the judgment would affect the public at large.[14] FRCE's claim that it was entitled to intervention as of right is without merit.

[13] While the attorney general welcomed FRCE as a party and agreed that the trial court should have admitted FRCE's motion to intervene, we are not bound by such concessions. See State v. Ray, 30 Conn. App. 95, 100, 619 A.2d 469, cert. granted on other grounds, 225 Conn. 919, 625 A.2d 822 (1993); but see State Board of Education v. Waterbury, 21 Conn. App. 67, 74 n.7, 571 A.2d 148 (1990).

[14] We disagree with the dissent's attempt to analogize State Board of Education v. Waterbury, 21 Conn. App. 67, 571 A.2d 148 (1990), with the present case. In State Board of Education v. Waterbury, supra, 73–74, the court did not set forth the standard of review it applied. Nonetheless, under either the clearly erroneous or abuse of discretion standard, the appellants have not demonstrated that the trial court erred. In State Board of Education v. Waterbury, supra, 74, this court concluded that in a desegregation action while "the attainment of the ultimate goal, the realization of the school racial balancing plan, may be the same, the plaintiffs and the appellants may well be at odds with regard to the structure of settlement proposals, delays and concessions, which the current plaintiffs might be willing to afford the defendants, arguably to the detriment of the appellants' interest, and concern for the immediate implementation of the plan." This court noted that "the appellants have 'more parochial interests' dealing with the education of their children." Id. "[T]he [intervenors'] direct and limited interest in ensuring that any desegregation plan does not disproportionately impose the burdens of desegregation on them is quite distinguishable from the plaintiffs' general institutional concerns for racial balance in Connecticut schools." Id.

Here, the trial court concluded that the attorney general would adequately represent FRCE's interest in the proceeding. We cannot say that the trial court's implicit finding that the attorney general's interest and FRCE's interest are sufficiently parallel is clearly erroneous. If FRCE wanted to challenge the court's underlying findings, it should have filed a motion for articulation. Practice Book § 4051. No evidence has been presented to demonstrate that FRCE's interests would be compromised or rights dissipated by having the attorney general represent it. We also cannot say that in concluding that the attorney general would adequately represent FRCE's interest, the trial court abused its discretion.

The issue is not whether we would have made a different factual determination than did the trial court or if we would have exercised discretion

## III

FRCE further asserts that the trial court improperly denied its motion to intervene under permissive standards. We are unpersuaded that the trial court abused its discretion in denying FRCE's request for permissive intervention.

Because questions of permissive intervention are committed to the sound discretion of the trial court, FRCE bears the heavy burden of demonstrating an abuse of that discretion in order to prevail. *In re Baby Girl B.,* supra, 277; *Horton* v. *Meskill,* supra, 197.

"Our cases establish that, in determining whether to grant a request for permissive intervention, a court should consider several factors: the timeliness of the intervention, the proposed intervenor's interest in the controversy, the adequacy of representation of such interests by other parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in resolving the controversy. . . . A ruling on a motion for permissive intervention would be erroneous only in the rare case where such factors weigh so heavily against the ruling that it would amount to an abuse of the trial court's discretion." (Citations omitted; internal quotation marks omitted.) *In re Baby Girl B.,* supra, 277–78; *Milford* v. *Local 1566,* 200 Conn. 91, 94, 510 A.2d 177 (1986); *Horton* v. *Meskill,* supra.

Applying the factors set forth above, we conclude that the trial court did not abuse its discretion in denying FRCE's request to intervene. The trial court found that the attorney general adequately represented

differently, but the issue is whether the factual determination is clearly erroneous and the action resulting therefrom represented an abuse of discretion. We are convinced that both inquiries must be answered in the negative.

FRCE's interest and that undue delay would result if FRCE were permitted to intervene. On the basis of these findings, the trial court could properly deny FRCE's request for permissive intervention.

The judgment is affirmed.

In this opinion DUPONT, C. J., concurred.

SCHALLER, J., dissenting. This appeal involves the right of a group of some 300 citizens to intervene and participate in a lawsuit that will decide whether the quality of air in their own neighborhood will be adversely affected by the emissions from a manufacturing plant operating in the immediate vicinity. Because I believe the right of these citizens to intervene in the action is supported by existing statutory and decisional law, I respectfully dissent.

I do not disagree with the majority's statement of essential facts or its recitation of the law that applies to this case. In my view, however, the application of the law to those facts compels the conclusion that FRCE is entitled to intervene under both General Statutes § 22a-19 (a) and General Statutes §§ 52-102 and 52-107.[1]

I

## INTERVENTION UNDER GENERAL STATUTES § 22a-19 (a)

At the outset, I would note that FRCE has presented a convincing case for an absolute right of intervention under General Statutes § 22a-19 (a).[2] I believe that a

---

[1] FRCE also cites Practice Book §§ 99 and 100 as grounds for intervention as of right. As did the majority, I have relied on the provisions in the General Statutes as well as those in the Practice Book.

[2] I note that the plaintiffs have raised for the first time on appeal the argument that General Statutes § 22a-19 does not provide FRCE with a right of intervention in this case because the present action is a "civil rights action,"

fair reading of § 22a-19, against the background of strong legislative policy in favor of the right of citizens to intervene in environmental actions, indicates that FRCE had an absolute right to intervene in this case. That legislative policy bears repeating: The purpose of the Environmental Protection Act "is to give private citizens a voice in ensuring that the air, water and other natural resources of the state remain protected, preserved and enhanced, and to provide them with 'an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction.' General Statutes § 22a-15. It, therefore, allows a member of the general public to intervene in an existing judicial review of an agency action or to initiate an independent declaratory or injunctive action. General Statutes § 22a-19." *Connecticut Water Co.* v. *Beausoleil,* 204 Conn. 38, 44–45, 526 A.2d 1329 (1987).

Our courts have recognized the importance of construing a statute in accordance with the legislative policy the statute was designed to implement. *Cheshire Mortgage Service, Inc.* v. *Montes,* 223 Conn. 80, 96, 612 A.2d 1130 (1992); *Chrysler Corporation* v. *Maiocco,* 209 Conn. 579, 592, 552 A.2d 1207 (1989). This principle of construction is particularly applicable in the context of environmental legislation. Environmental statutes are remedial in nature and should be liberally construed to accomplish their purpose. *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 57, 441 A.2d 68 (1981).

---

not an administrative appeal. This issue was never raised before the trial court nor was it presented to this court as an alternate ground of decision. The issue was first raised in its brief. It is well settled that only in the most exceptional circumstances will an appellate court consider a claim that was not raised in the trial court. *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703, 716, 535 A.2d 799 (1988); *Board of Education* v. *Local 1282,* 31 Conn. App. 629, 633–34, 626 A.2d 1314 (1993).

I believe that the principle requiring that statutes be interpreted to effect the policy that the legislation seeks to achieve deserves allegiance from this court. Viewed from this perspective, the term "other proceeding" as well as the reference in § 22a-19 to judicial review should be liberally interpreted to further the legislative policy behind the Environmental Protection Act.

While the plaintiffs elected to bypass review of the administrative decision by means of a timely appeal, instead electing to bring an independent "civil rights action," the effect of the relief sought is, at the heart of the matter, the equivalent of the judicial review that would have taken place in the course of the administrative appeal. In their "civil rights action," the plaintiffs seek injunctive relief that would restrain the commissioner of environmental protection from enforcing restrictions on the operation of the plaintiff's facility. An administrative appeal seeking a judgment vacating the decision of the administrative hearing officer undoubtedly would have sought the same objective. In short, there is no reason why FRCE should be deprived of its absolute statutory right to intervene merely because the plaintiffs chose an indirect route to judicial review of the agency order rather than the direct route.

As the majority recognizes, not only had FRCE participated fully in both administrative proceedings leading to the present action but, in addition, FRCE had the unqualified support of the appellee commissioner of environmental protection in its effort to intervene in the present action.

## II

### INTERVENTION UNDER GENERAL STATUTES §§ 52-102 AND 52-107

While the foregoing analysis alone should vindicate FRCE's absolute right to intervene, the case for inter-

vention as of right based on General Statutes §§ 52-102 and 52-107 is stronger. The conditions necessary to qualify for intervention as of right were set forth in *State Board of Education* v. *Waterbury,* 21 Conn. App. 67, 72, 571 A.2d 148 (1990).[3] Intervention as of right requires that (1) the application be timely, (2) the applicant claim an interest relating to the transaction that is the subject of the action, (3) the applicant show that its ability to protect that interest may as a practical matter be impaired or impeded by disposition of the action, (4) the applicant's interest is not adequately represented by the existing parties. "Failure to meet any one of the conditions is sufficient to deny intervention as of right." *State Board of Education* v. *Waterbury,* supra, citing *NAACP* v. *New York,* 413 U.S. 345, 369, 93 S. Ct. 2591, 37 L. Ed. 2d 648 (1973).

In the present case, the trial court determined that FRCE established the first three conditions. The court found that the only issue with respect to intervention as of right was the fourth condition. In this regard, the court concluded that the commissioner could adequately represent FRCE's interests. In my view, the trial court's determination squarely conflicts with this court's decision in *State Board of Education* v. *Waterbury,* supra, and finds no support in the record.

In *State Board of Education* v. *Waterbury,* supra, the state board of education brought suit against Water-

---

[3] In *State Board of Education* v. *Waterbury,* 21 Conn. App. 67, 72, 571 A.2d 148 (1990), this court drew on case law interpreting the intervention as of right provision of the Federal Rules of Civil Procedure; e.g., *United States* v. *Board of Education,* 88 F.R.D. 679 (1981); and concluded that "even under these [federal] standards, we find that the appellants here qualify for intervention as of right." It is unclear whether this court has expressly adopted this four part analysis in all cases involving intervention as of right under General Statutes §§ 52-102 and 52-107 and Practice Book §§ 99 and 100. Certainly, the four part analysis articulated in *United States* v. *Board of Education,* supra, offers a convenient and fair framework for analysis.

bury seeking an order to compel Waterbury to implement an approved desegregation plan for the Maloney school. The Maloney school parent teachers organization moved to intervene as plaintiffs. The trial court, however, denied the motion because there was no reason to believe that the attorney general would not represent all citizens of the state in reaching a conclusion consistent with the United States and state constitutions. In rejecting the trial court's reasoning, we held that "[t]he court's expressed concern for the entire citizenry of Connecticut misses the significance of the appellants' special interest in this case. That interest may, at times, compete with the interests of the state board of education, the commissioner of education and 'all the other citizens' of Connecticut. . . . [The parents] have 'more *parochial interests'*. . . ." (Emphasis added.) Id., 73–74.

A similar analysis applies to the present case. Here, FRCE has asserted a parochial and specialized interest; its membership is directly affected by the alleged emission of various substances and odors. FRCE thus has a distinct parochial interest—in contrast to the commissioner's broader interest in representing all the citizens of Connecticut. The significant difference between these interests raises the specter of conflict to the extent that the commissioner may not be an adequate representative of FRCE's interests. *Trbovich* v. *United Mine Workers,* 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972) (to satisfy rule that existing party cannot adequately represent the applicant, the applicant must show "that representation of his interest *may* be inadequate; and the burden of making that showing should be treated as minimal" [emphasis added]).[4]

---

[4] 7C C. Wright & A. Miller, Federal Practice and Procedure (2d Ed. 1986) § 1909, p. 346, summarized federal law regarding an applicant's burden of showing inadequate representation as follows: "[I]nterests may be different without being adverse but it has been increasingly recognized in recent

Apart from the fact that the trial court's decision conflicts with the decision in *State Board of Education* v. *Waterbury*, supra, it is clear that the trial court failed to consider the overarching fact that the commissioner fully supported FRCE's intervention. The commissioner—the very party responsible for enforcing the Environmental Protection Act and providing the representation—urged the court to consider the need for the additional representation. Counsel for the commissioner argued that "concerned as we may be about the health of the citizens, we don't live there. And [we] don't think anybody else can substitute an interest for the people who are in fact suffering the effects that this case is about. And for that reason, [we] think it's entirely appropriate that [FRCE] be permitted to intervene."[5] The commissioner's position, of itself, offers a compelling reason to grant FRCE's motion for intervention.

Next, the trial court failed to give any consideration to the active role played by FRCE in the administrative proceedings that gave rise to this action. After the first administrative hearing, the commissioner found that the plaintiff's facility created a nuisance and unreasonably interfered with the community's enjoyment of life. Following this order, the plaintiff entered into a consent order with the commissioner. FRCE objected to the order. By doing so, FRCE revealed that its interests do not necessarily coincide with those of the commissioner.

In the second administrative proceeding, the commissioner issued an order finding that the plaintiffs'

cases that interests need not be wholly adverse before there is a basis for concluding that existing representation of a different interest may be inadequate. . . . A discriminating appraisal of the circumstances of the particular case is required, but since the rule is satisfied if there is a serious possibility that the representation may be inadequate, all reasonable doubts should be resolved in favor of allowing the absentee, who has an interest different from that of any existing party, to intervene so that he may be heard in his own behalf." (Internal quotation marks omitted.)

[5] Additional support for FRCE's intervention came from the town of Farmington, which was also barred from intervening.

emissions caused or were likely to cause damage to the public health. The commissioner further issued restrictions on the operation of the facility. Again, FRCE indicated its genuine interest in the litigation when it requested the commissioner to include additional requirements to the final order. Through these efforts, FRCE displayed an independent and serious interest in the operation of the Polymer facility. In denying FRCE's motion for intervention, the trial court gave no consideration to FRCE's vigilance in the course of the administrative proceedings.[6]

Finally, the trial court completely overlooked the powerfully expressed legislative intent of the Environmental Protection Act asserting the right of citizen participation in matters that directly affect their own environment. Here, FRCE has a direct personal interest of an immediate nature in the outcome of the controversy. That interest was fully recognized in the administrative proceedings and should be acknowledged by this court. Principles of fairness and environmental concern demand that result.

I believe that the trial court acted improperly in denying FRCE the right of intervention in this case. I would reverse the trial court order denying intervention and remand the case for further proceedings.

For the foregoing reasons, I respectfully dissent.

---

[6] In fact, notwithstanding its consent to certain restrictions, Polymer objected to the restrictions and obtained an ex parte order restraining the commissioner from enforcing the restrictions.