[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PATERNAL GRANDPARENT'S MOTION TO INTERVENE
The above referenced children are the subjects of petitions seeking their commitment filed January 8, 1993, in which the Department of Children and Families alleges the children to be neglected and uncared for. The parents of the children have denied the allegations. The children have been in foster care pursuant to an Order of Temporary Custody issued by this court on the date of the filing of the petitions.
On June 29, 1993, the paternal grandmother filed a motion to intervene in this action. The state objected, and all parties have filed Memoranda of Law.
The children, by their attorney, oppose intervention during the adjudicatory phase of these proceedings, but they CT Page 10045 support it for purposes of disposition. Both parents support intervention for purposes of both adjudication and disposition, and, as previously indicated, the petitioning Department of Children and Families is opposed to intervention at any stage of the proceedings.
All parties appear to assume, and the court agrees, that the paternal grandmother does not have a "legal interest" in the proceedings within the meaning of Practice Book 1023 such as would entitle her to intervene as a matter of right. If she is to intervene at all, it is to be through the exercise of the court's discretion. See In re: Jason P.,41 Conn. Sup. 23, 549 A.2d 286 (1988). Whether a person is an "equitable party at interest" and whether such a party should be permitted to intervene, depends largely on whether or not the court determines that the participation of such a person in the proceedings as a party "may promote the interests of justice." Connecticut Practice Book 1023(1)(2). The Practice Book definition of "equitable party at interest" includes, but is not limited to, "any father or mother, natural, adoptive or putative, or any parental surrogate. . . ." Grandparents are not specifically included within this definition, but the phrase "not limited to" certainly suggests that the Judges of the Superior Court did not intend an absolute bar to intervention by a grandparent.
The exercise of discretion in a matter of proposed intervention by an equitable party requires consideration of the "timeliness of the intervention, of the proposed intervenor's interests in the controversy, the adequacy of representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing parties that the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court. Horton v. Meskill, 187 Conn. 187,191 (1982).
No claim has been made by any party that the paternal grandparent's effort to intervene was untimely, and the court finds that the timing of the filing of the instant motion has not in any way inconvenienced any party or the court.
The allegations of the petition are that the parents denied their children medical treatment, exposed them to unsanitary conditions in the home and exposed and involved the CT Page 10046 children in sexual activity and physical abuse. No party has claimed any involvement, direct or indirect, of the paternal grandparent in any of these allegations. There is, therefore, no basis upon which this court can conclude that the proposed intervenor has an interest in the adjudicatory phase of the controversy. Even if she did, however, the court is satisfied that all interests relating to adjudication are adequately protected by counsel for the petitioning Department, counsel for the children and individual counsel for each parent.
The court would also be concerned about possible delays in adjudication were the paternal grandmother permitted to intervene. Although this court is aware of no empirical research into the phenomenon, it has, based on its own observations and on anecdotal evidence, formulated what for want of a better name it has chosen to call Silbert's Corollary to Murphy's Law: "The greater the number of attorneys in a given case, the harder it is to assemble them in a single courtroom on a date certain."[1] This principle is not an adverse reflection on the legal profession in general or the attorneys who have appeared in this case in particular. It is, rather a statement of belief based on observation and experience that applies with particular force to this case, given the fact that the Juvenile Matters courthouse is located at considerable distance from all other courthouses within this Judicial District.
The court wishes to stress that this principle alone would not be a basis for denying intervention in an appropriate case. Nevertheless, under the circumstances presented by the instant petition, and in combination with other factors, it contributes to an already strong case against permitting intervention. The court notes, however, that other than the increased prospects for delay, it sees no other prejudice to the existing parties that could arise as the result of granting intervention.
Most telling, with respect to at least the adjudicatory phase of the hearing, is the fact that there is no "necessity for or value of the intervention in terms of resolving the controversy before the court." Horton v. Meskill, Id. The proposed intervenor makes no showing whatever that her participation as a party would aid the court in finding the facts relevant to an adjudication. CT Page 10047
The proposed intervenor, the children and the parents all argue that even if intervention is inappropriate for purposes of adjudication, the paternal grandmother should be permitted to intervene for purposes of disposition. The proposed intervenor claims that the "grandparents seek to ensure visitation, support, affection with their grandchildren and potential placement if necessary." All of these are appropriate for consideration as dispositional issues.
The same factors that militated against intervention for purposes of a adjudication, however, dictate the same result with respect to disposition. Although the effort to intervene is timely, and although the court recognizes that the grandparents have a legitimate equitable interest in issues concerning visitation, support, and placement, it is apparent to the court that under the circumstances of this case, those interests are well represented by the existing parties and their counsel. The children and the parents support intervention for the purpose of allowing the paternal grandmother to pursue those interests, which they apparently view to be consonant with their own. There is no reason to believe that one or another of those parties, or indeed, even the petitioning Department, will not present those interests to the court, call the proposed intervenor as a witness, if need be, and present evidence with respect to the appropriateness of visitation, placement or any other dispositional issue.
The parties have brought to the court's attention numerous cases from other jurisdictions in which intervention by grandparents in similar proceedings has been allowed. Iowa and Arizona courts, acting pursuant to statutes expressly permitting intervention by grandparents, have upheld such intervention. In the Interest of T.R., 315 N.W.2d 750 (Iowa, 1982); Bechtel v. Rose, in and for Maricopa County, 722 P.2d 236
(Ariz., 1986). Illinois has permitted intervention where the grandparents have exercised custody or control over the child. In re R.M.B., 496 N.E.2d 1248 (Ill., App. 4 Dist., 1986). California has permitted intervention where the grandparents were acting as foster parents. In re Kristin B.,232 Cal.Rptr. 36 (Cal.App. 4 Dist., 1986).
In other cases, courts have denied intervention where the grandparent lacked standing. In the Interest of J.S., 404 So.2d 1144
(Fla.App. 1981). Kansas denied intervention where CT Page 10048 the grandparents had an interest in eventual custody but were not the subjects of the pending termination of parental rights petition. In the Interest of Walker, 630 P.2d 1102 (Kan., 1981). A Missouri court denied intervention on the basis of its conclusion that the grandparents' interests were adequately protected during the neglect proceedings. T.W. v. A.W., 670 S.W.2d 563 (Mo.App. 1984).
In Connecticut, no statute specifically authorizes intervention by grandparents. In her motion, the grandparent has not alleged that she has exercised custody or control over the children who are the subjects of the instant petition, nor is there a claim that the grandparent has acted as a foster parent. Thus, the foreign cases in which intervention has been permitted are not on point. In contrast, the reported cases of other jurisdictions denying intervention are in accord with the fact pattern presented by this case.
This court cautions that its opinion should not be viewed as a blanket prohibition against intervention by interested grandparents. To the contrary, the court recognizes the exceedingly important role that grandparents can, frequently do, and probably should play in nurturing, guiding and otherwise contributing to the welfare and acculturation of their grandchildren. Children who have had the benefit of such nurturing grandparents are, all other things being equal, far more fortunate than those who have not, and this court believes that it is appropriate to foster the continuity of such relationships.
Having said that, however, the court feels that in this case it can help to accomplish that end through the hearing process as it currently exists, with the parties as they currently exist, and without the formal participation of the paternal grandmother as a party. The court views this as a wholly fact-bound determination, and it can readily envision case involving circumstances under which it would permit intervention. This, however, is not that case.
For all the above reasons, the motion of the paternal grandmother to intervene in the matter is denied.
Jonathan E. Silbert, Judge