[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Two parties have moved to intervene as party defendants pursuant to General Statutes 52-102.[1] The Connecticut State Building and Construction Trades Council ("BCTC") is an organization consisting of various labor union locals which negotiated with the commissioner to include the PLA [Project Labor Agreement] in the bid package. The Fusco Corporation is the lowest bidder on the project.
"To intervene [as of right], . . . the movant bears the burden of proving all of the following elements: (1) the motion to intervene must be timely; (2) the movant must have a direct and substantial interest in the subject matter of the litigation: (3) the movant's interest must be impaired by disposition of the action without the movant's involvement; (4) the movant's interest must not be represented adequately by one of the existing parties to the action." Washington Trust Co. v.Smith, 42 Conn. App. 330, 336, 680 A.2d 988 (1996), rev'd on other grounds, 241 Conn. 734, 669 A.2d 73 (1997). "[A] person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him, her, or it. The judgment to be rendered must affect the proposed intervener's direct or personal rights, not those of another." Horton v. Meskill,187 Conn. 187, 195, 445 A.2d 579 (1982) "An applicant for intervention has a right to intervene . . . where the applicant's interest is of such a direct and immediate character that the applicant will either gain or lose by the direct legal operation and effect of the judgment. The applicant has the burden of proving each of the four elements of intervention as of right: the lack of one element requires that the motion to intervene be denied." (citations omitted: internal quotation marks omitted.)Washington Trust Co. v. Smith, supra, 4 Conn. App. 338.
Permissive intervention is a matter entrusted to the discretion of the trial court. Horton v. Meskill, supra, 187 Conn. 197. "The consideration of permissive CT Page 9593 intervention involves numerous factors including the timeliness of the intervention. the proposed intervener's interests in the controversy. the adequacy of representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing, a parties the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court." Id.
Both parties moved to intervene early in the proceedings. BCTC filed its motion on May 15, 1998, ten days after the complaint was filed, and Fusco Corp, filed its motion at the hearing on June 3, 1998 "As a General matter, the timeliness requirement is applied more leniently for intervention of right than for permissive intervention because of the greater likelihood that serious prejudice will result." (Emphasis in original.) Washington Trust Co. v. Smith, supra.241 Conn. 744. With no potential for prejudice at this stage of the proceedings, the court finds the motions timely.
The issue, then, is whether the parties has, shown that their interest in the controversy is direct and substantial enough to warrant intervention as of right. Although neither party argued for permissive intervention in the alternative, the court may consider their motions under the permissive standard also. "For purposes of judging the satisfaction of the conditions for intervention we look to the pleadings, that is, to the motion for leave to intervene and to the proposed complaint or defense in intervention, and . . . we accept the allegations in those pleadings as true. The question on a petition to intervene is whether a well-pleaded defense or claim is asserted. Its merits are not to be determined. The defense or claim is assumed to be true on motion to intervene. at least in the absence of sham, frivolity, and other similar objections. (Internal quotation marks omitted.) Washington Trust Co. v. Smith, supra,241 Conn. 746.
I. Connecticut State Building and Construction Trades Council (BCTC)
BCTC contends that its interest is "of such a nature that the requested relief cannot be granted without affecting [its] interest in said contract." The plaintiffs argue that (I) because the contract has not been awarded to any bidder. BCTC's interest is merely a prospective pecuniary interest rather than a vested interest: and (2) BCTC's interest is adequately represented by the commissioner. CT Page 9594
BCTC relies on a case from the Supreme Court of Alaska,Laborers Local No. 942 v. Lampkin, 956 P.2d 422 (Alaska 1998). which involved facts almost identical to those in the present case. In Lampkin, the Fairbanks North Star Borough, a public entity, initiated a public building project, and in its invitation for bids included a specification requiring successful bidders to sign a PLA. Shortly thereafter, a croup of non-union employees, taxpayers, and employers filed a complaint challenging the legality of including the PLA in the bid specifications. The construction trade unions that negotiated the PLA moved to intervene in the action prior to the commencement of the trial on the preliminary injunction. The trial court denied the motions and proceeded to trial. Id., 427-29
On appeal, the plaintiffs argued against the unions right to intervene on the ground that the interest of the unions was "contingent" because the contract had not yet been awarded or executed. The court rejected that argument and, applying the same four elements of intervention as of right applied by Connecticut courts, concluded that "the superior court abused its discretion in denying the Unions' motion to intervene as of right."Laborers Local No. 942 v. Lampkin, supra, 956 P.2d 439. It reasoned that "the Unions' interest in the PLA is broader than merely their contractual right to enforce the terms of the PLA. . . . The Unions . . . participated in negotiating the PLA and were not merely beneficiaries of a challenged administrative process. Their stake in the implementation of the PLA, arising during their negotiation of the PLA and thus prior to [the plaintiffs'] challenge, was as direct. substantial and significantly protectable as the Borough's. Therefore, the Unions' interest was sufficient to warrant intervention." Id., 438. The court also determined that "the Unions' interest was not adequately represented by the Borough," reasoning that "the PLA was the product of negotiations between the two entities . . . [and that] the Borough's interest in preserving the PLA, and hence the concessions on wages, hours, and working conditions it had won. did not coincide with the Unions' interest in protecting other provisions of the agreement." Id., 438 39.
The Lampkin decision is not persuasive in the present case because BCTC's interest is not a legal enforceable contract right. The Lampkin court reasoned that the union's interest was not derived from the PLA itself, but from the separate agreement the unions had with the borough under which CT Page 9595 the borough agreed to use union labor for the project. Even if BCTC and the commissioner intended to form a contract to include the PLA in the bid package, the legality of that agreement is in question. The state is not bound by the unauthorized contracts of its officers, 72 Am.Jur.2d. States-Contracts-Formation and Execution, 74, p. 470 (1974): Unisys Corp. v. Dept. ofLabor, 220 Conn. 689, 697, 600 A.2d 1019 (1991) (under competitive bidding statutes, § 4a-65 any purchase contract made contrary to statute is null and void). Therefore, BCTC does not have a clearly enforceable legal right derived from the development of the bid package. The Alaska Supreme Court may have had the benefit of hindsight in deciding that the unions interests was a protected contract right after the use of the PLA had been found valid. Moreover, while the Lampkin decision may be informative, its holding is only relevant to the validity of the agreement under Alaska's state constitution and the Borough's procurement code. The issue before this court is the validity of the agreement under Connecticut's constitution and Connecticut's competitive bidding statutes.
In the Connecticut statutory scheme, under § 4b-94,[2]
the commissioner reserves the right to reject any and all bids under certain circumstances. Since the commissioner is free to reject all bids and invite a new round of bids under different requirements. the unions' interest in this bid package remains contingent on the award of the contract to one of the contractors who submitted a bid under the contested bid package.
While BCTC does have an interest in seeing this project completed with a predominantly union workforce, an interest which will be impaired if the bidding on this project is found invalid, its general interest in securing state contracts for union contractors will not be impaired in any way because union contractors will not be prevented from submitting bids. In this reward, BCTC's interest is the same as ABC's-i.e., obtaining state contracts for its constituent members. A decision in this case will not jeopardize a union contractor's rights to submit bids.
Municipal competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, and to benefit the taxpayers, not the bidders; they, should be construed to accomplish these purposes fairly and reasonable with sole reference to the public interest. JohnCT Page 9596J. Brennan Construction Corp. v. Shelton, 187 Conn. 695,702, 448 A.2d (1982). The only issue before the court, then, is whether the commissioner's actions infringed on the public interest in maintaining fairness in the competitive bidding process. Therefore, BCTC's motion to intervene as of right is denied.
The court may, however, in its discretion, allow permissive intervention if the court finds that BCTC's participation in the litigation would be helpful in resolving the issues. However, the court can fully resolve the issues with the parties already before it. The commissioner is the party most able to defend his own procedures and the public's interest in maintaining fair and valid competitive bidding procedures. Milford v. Local,200 Conn. 91, 95, 510 A.2d 177 (1986); see also PolymerResources, LTD. v. Keeney, 32 Conn. App. 340, 350-51,629 A.2d 447 (1993) (public interest group did not have sufficiently direct or personal interest to require intervention because its interest coincided with that of the public). The commissioner can adequately protect the interests of and third party organization who may seek contracts with the state through competitive bidding.
II. Fusco Corporation
Fusco contends that since it is the low bidder, on the project. "it has a direct and pecuniary interest in the outcome of this litigation in that the plaintiffs seek to enjoin the project contract award to it." As lowest bidder. however, it has only the possibility of entering into a contract with the state.
"A bid is a binding offer to make a contract. . . . A bid, even the lowest responsible one, submitted in response to an invitation for bids is only an offer which. until accepted by the municipality, does not give rise to a contract between the parties." (citations omitted.) John J. Brennman ConstructionCorporation, Inc. v. Shelton, 187 Conn. 695, 702,448 A.2d 180 (1982). "The process involved in the solicitation of bids has been established for the benefit of the public, and does not create any rights in those who submit bids . . . . Thus, even as the highest [or lowest] bidder, the plaintiff has no justiciable rights . . . . The plaintiff did not obtain a vested or property interest in the contract merely because he submitted the highest [or lowest] bid. A successful bidder cannot claim any contractual rights until he has been awarded the contract." (Citations CT Page 9597 omitted.) St. John v. State, 9 Conn. App. 514, 522-23,520 A.2d 612 (1987).
Fusco, as the low bidder, is obviously interested in the outcome of this action and would be affected by it, but it has no property or justiciable rights which establish its standing to intervene in this case. Thus, its motion to intervene as of right is denied.
Nor should it be allowed permissive intervention. It has no justiciable interest in the controversy and its presence will not aid the court in resolving the issues.
Neither party has a sufficiently direct and personal legal interest in the subject matter of this case to justify intervention as of right or permissive intervention. Accordingly, the motions are denied.
John J. Langenbach Superior Court Judge