At the present time, the court must decide whether a paternal grandmother should be permitted to intervene as a party in petitions for neglect and for the termination of parental rights after her son, *Page 24 
the child's father, consented to a termination of his parental rights. No Connecticut cases appear to have considered this question, which was belatedly injected into the case.
 I
The following chronological summary puts the claim for intervention into proper perspective. The two petitions were filed simultaneously pursuant to General Statutes § 17-43a (e) by the commissioner of the department of children and youth services (DCYS) about two months after the child's birth. One petition alleges that Jason P. is a neglected child. The second petition seeks a termination of the rights of Jason's parents, Paul P. and Janet G. The gravamen of both petitions is that the child sustained physical abuse of a serious nature in the first eight weeks of his life.
Some four and one-half months after the petitions were filed, Paul ceased contesting the claims of DCYS. He pleaded nolo contendere to the neglect petition in view of a pending criminal prosecution. On the termination petition, Paul executed a written consent, on the prescribed form, to a termination of his parental rights. His consent was accepted after a full canvass by the court. Paul is now serving a prison sentence for injuries caused to the child.
Some five months after the petitions were filed the trial began, with Janet as the only remaining respondent. The trial continued on intermittent days for three months, when the presentation of evidence was completed. Encompassed in the trial were the adjudicatory and dispositive phases of both petitions, a procedure that is sanctioned by decisions of the Supreme Court.In re Juvenile Appeal (84-AB), 192 Conn. 254, 259,411 A.2d 1380 (1984); State v. Anonymous, 179 Conn. 155,172-73, 425 A.2d 939 (1979). *Page 25 
The first intimation of any desire on the part of the paternal grandmother to intervene was an appearance form filed by her attorney almost two and one-half months after the trial had begun, by which time it had progressed to a great extent. The court informed the attorney that intervention could not be accomplished merely by filing an appearance. General Statutes § 52-107; Practice Book § 99. A "petition" to intervene accompanied by a memorandum of law was filed six days after the trial ended. In anticipation that a formal motion would be forthcoming, the court, eight days earlier, had set that later date as the hearing date.
No testimony was taken at the hearing, where intervention by the paternal grandmother was opposed by DCYS, Janet and the attorney serving as guardian ad litem for the child. But the grandmother's attorney stated, in the grandmother's presence and with her acquiescence, that the grandmother knew of the order of temporary custody and that she knew of her son's consent to the termination of his parental rights within one week after it was entered. An order of temporary custody was issued ex parte on the date the petitions were originally filed and was confirmed after a hearing less than one month later. As mentioned, Paul gave up his parental rights about four and one-half months after the petitions were filed or one month before the trial began. It is, therefore, undisputed that the paternal grandmother knew of the proceedings well in advance of the completed trial.
 II
In her motion, the paternal grandmother asks to intervene in order to seek custody. Whereas an award of custody may be the purpose of the motion, the basis of the claim for intervention is quite another matter. The premise advanced by the paternal grandmother is that only an adoption and not a termination of parental *Page 26 
rights severs the parent-child relationship and, therefore, despite her son's action, she, as a blood relative, has a right to intervene. She relies on the provisions of certain statutes, notably General Statutes § 45-64a (5) and (6),[1] to support her claim.
The parameters for intervention have been discussed in Horton v. Meskill, 187 Conn. 187, 445 A.2d 579
(1982). In that case, the Supreme Court utilized the provisions of rule 24 of the Federal Rules of Civil Procedure to explain that a distinction should be made between intervention as of right and permissive intervention at the discretion of the trial court. Reference was made to the federal procedural rule for the reason that the two types of intervention are not clearly delineated in Practice Book § 99 or General Statutes § 52-107.
As described in Horton v. Meskill, supra, 191, an applicant for intervention has a right to intervene where the applicant's interest is of such direct and immediate character that the applicant will either gain or lose by the direct legal operation and effect of the judgment. Permissive intervention, on the other hand, rests on several factors such as "timeliness of the intervention, the proposed intervenor's interests in the controversy, the adequacy of representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing parties that the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court." Id., 197. *Page 27 
The threshold question is whether intervention by the paternal grandmother should be considered as a matter of right. For juvenile proceedings, the question is answered in the negative by Practice Book § 1023 (l) wherein parties are separated into legal and equitable categories. A "legal party at interest" is "[a]ny person, including a parent, whose legal relationship to the matter pending before the court is of such nature and kind as to mandate the receipt by him of proper legal notice as a condition precedent to the establishment of the court's jurisdiction." Practice Book § 1023 (l) (3). An "equitable party at interest" is defined as "[a]ny person whose interest in the matter before the court is not of such a nature and kind as to entitle him to legal service as a prerequisite to the court's jurisdiction over the proceeding but whose participation therein, at the discretion of the court, may promote the interests of justice." Practice Book § 1023 (l) (2).
With respect to a neglect petition, the parties required by law to be served are the parents or guardian of the child. General Statutes § 46b-129 (a). With respect to a termination petition, service is required for parents, including a parent who has been removed as guardian and certain putative fathers. General Statutes § 45-61d (b). All other persons desiring to participate, including the paternal grandmother in this case, are, by terminology, equitable parties whose intervention is discretionary with the court. It is not suggested that the dichotomy of intervention as of right versus permissive intervention used in Horton v. Meskill,
supra, 191, will always be congruent with the classification of legal and equitable parties supplied by Practice Book § 1023 (l).[2] There are, however, specific state *Page 28 
rules of practice to govern the situation at hand, unlike that in Horton v. Meskill, supra.
The factors mentioned for permissive intervention in Horton v. Meskill, supra, 197, of course, provide the controlling criteria for this court's determination. An application of these factors to the present case brings forth several reasons why the motion to intervene should be denied.
With the knowledge that the paternal grandmother had, her motion after the trial certainly was untimely. Even when intervention is a matter of right, the right will be lost, not merely weakened, if it is not exercised in a timely fashion. Id., 193-94. Allowing the paternal grandmother to intervene will delay the proceedings and cause prejudice to the existing parties. The trial was protracted. Although there was not much dispute as to Jason's status as an abused or neglected child; see General Statutes §§ 46b-120, 17-38a (f)(4); there was a great deal of evidence, on the termination petition, as to whether Janet, as opposed to Paul, should be held accountable for acts of parental commission or omission. See General Statutes § 17-43a (b)(3). Also, there was a great deal of evidence pertaining to both petitions as to what dispositions would be proper. On the disputed issues, testimony was given by psychiatrists, psychologists, medical doctors and social workers. Not one of the expert witnesses was asked to consider the placement of the child with the paternal grandmother.[3]
To introduce her into the picture at this juncture would require further study by expert witnesses and a rehearing of much of the case.
One factor mentioned in Horton v. Meskill, supra, 197, might be considered as favoring intervention. None of the existing parties represents the interests *Page 29 
of the paternal grandmother, which at the present time are particularly antagonistic to the interests of Janet. Complete success for Janet, in this litigation, would preclude the paternal grandmother as custodian. The "family life" constitutional liberty interest is most frequently recognized as being limited to the context of the marital or parent-child relationship. L.F.M. v. Departmentof Social Services, 67 Md. App. 379, 386-87,507 A.2d 1151 (1986) (collecting decisions of the United States Supreme Court). The one possibly favorable factor, however, is overridden by others. As explained below, the interest of the paternal grandmother is insufficient in law to warrant her participation in the present controversy.
 III
Very few decisions appear to have considered the rights of parents of terminated parents in the period before the child is adopted. In the context of a termination action, the Appellate Division of the New Jersey Superior Court held that a grandparent's right to custody or even to visitation can rise no higher than those of a natural parent. J. and E. v. M. and F.,157 N.J. Super. 478, 494, 385 A.2d 240 (1978). In similar manner, the Supreme Court of Nebraska decided that "the parents of the parent whose rights have been terminated likewise lose any legal right to visitation which might otherwise exist." In re Interest of Ditter,212 Neb. 855, 857, 326 N.W.2d 675 (1982).
The decision in In Interest of J.R., 315 N.W.2d 750
(Iowa 1982), when properly analyzed, does not present contrary authority. In that case, grandparents were allowed to intervene in a termination action for the reason that under the Iowa termination statute, one of the permissible dispositions was a transfer of guardianship and custody to "a relative or other suitable person." On the ground of specific statutory entitlement, In Interestof J.R. has been distinguished from other decisions. *Page 30 Christian Placement Service v. Gordon, 102 N.M. 465,468, 697 P.2d 148 (1985).
In Connecticut, the effect of a judgment terminating the rights of both parents is to free the child for adoption through the appointment of a statutory parent. General Statutes §§ 45-61i (a), 45-61j. The statutory parent must be either DCYS or another child-placing agency. General Statutes §§ 17-43a (f), 45-61h. If Janet's parental rights are terminated as Paul's have already been, the paternal grandmother may suggest herself as an adoptive parent. Under our statutory scheme, however, it is the statutory parent who is responsible for the child's custody and the protection of his interests. General Statutes § 45-61h; Nye
v. Marcus, 198 Conn. 138, 145, 502 A.2d 869 (1985).
What has been said with respect to the termination petition applies with equal force to the neglect petition. The termination of Paul's parental rights forecloses his parent's participation, as a matter of right, in either petition. In re Interest of Ditter, supra; J. E. v. M. F., supra. Moreover, even if the neglect petition stood alone, the paternal grandmother could not intervene as of right. A child abuse or neglect proceeding is included within the definition of custody proceeding in the Uniform Child Custody Jurisdiction Act (act). General Statutes § 46b-92 (3). But to qualify as a "contestant" within the act, a party must assert a right to custody as distinguished from an eligibility to receive custody. General Statutes § 46b-92 (1); In Interest ofJ.S., 404 So.2d 1144, 1146 (Fla.App. 1981). The provision in General Statutes § 46b-129 (d) permitting a neglected child to be placed "with any person found to be suitable and worthy of such responsibility" does not confer any special right or status on the paternal grandmother qua grandmother.
 The paternal grandmother's petition to intervene is denied.