[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM — MOTION FOR JOINDER
Subsequent to removal by Order of Temporary Custody on March CT Page 10982 15, 1996, the three children were committed to the Department of Children and Families (DCF) on May 23, 1996. The commitments were extended to May 23, 1998. The court found that continuing reunification efforts were appropriate. The three children, ten to three years old, have resided in the same foster home since April 29, 1996.
The maternal grandmother has filed Motions for Joinder to become a party respondent in each grandchild neglect proceeding. At short calendar there was no objection to these Motions. The court will permit intervention.
 I
The mover cited Practice Book (P.B.) §§ 85 and 100 rather than P.B. § 1023.1 (k) for intervention, suggesting that the former provisions were more persuasive for intervention. This reliance on P.B. §§ 85 and 100 may be misplaced for those sections involve traditional "civil actions." Based on case law, juvenile matters are "essentially civil proceedings", P.B. 1049.1 (1). Conn. Gen. Stat. 46b-121 as amended in 1995 referring to "Juvenile Matters in the civil session . . ." and "Juvenile matters in the criminal session . . ." may only establish sub-labels within the juvenile matters category. On June 23, 1997, the judges of the Superior Court adopted amendments to the Practice Book based on the Rules Committee's introduction that the forthcoming design will ". . . transfer to the General Provision tab of the Practice Book those civil, family, juvenile (sic) and criminal rules which apply to all types of cases." The distinction remains between civil, juvenile and general rules. Cf. §§ 46b-1 and 46b-2.
Even if one starts with P.B. § 85 (§ 52-107) andHorton v. Meskill, 187 Conn. 187, 197 (1982) analysis, resolution of permissive intervention in juvenile matters would reference P.B. 1023.1 (k) (3). In re Jason P. 41 Conn. Sup. 23
(undated). (There is no claim of intervention by right). In determining under P.B. 1023.1 (k) (3) or P.B. § 85 whether the grandmothers participation may promote the interest of justice, the Horton v. Meskill factors should be utilized: the intervention is timely and will not unduly delay proceedings or prejudice the parties and it may even shorten period of commitment to DCF; the grandmother as extended family has an interest in the controversy. Castagno v. Wholean,239 Conn. 336, 352 fn. 16; § 17a-101; and the mother may not be able to CT Page 10983 adequately represent the mover's interest as the grandmother has separate counsel.
 II
While the joinder motion is not specific whether visitation or modification motions will be filed in this court, the mover suggested that party status in Superior Court would give greater presence to the grandmother in current discussions with DCF on those issues. The grandmother could have moved for intervenor status in the DCF administrative process. §§ 4-166 (5); 4-177a
(b). These court motions to intervene may be somewhat premature, or hopefully, unnecessary but any facilitation of a family resolution in the best interest of the children is welcome §17a-101 (a). DCF Treatment Unit Manual, VIII Treatment Plans forChildren in Foster Care: Planning Outcomes, C., page 36.
Independent of these motions, after reviewing a recent Treatment Plan the court requested a DCF report on visitation and placement with maternal grandmother.
 II
While the court takes no position at this time on visitation or custody, the court in its discretion, grants permission to the grandmother to intervene only in dispositional matters in the children's best interest.
SAMUEL S. GOLDSTEIN JUDGE TRIAL REFEREE