IN RE KRISTY L.[1]

CHERYL BRIDGEMAN ET AL. *v.* KRISTINE D. RAGAGLIA, COMMISSIONER OF CHILDREN AND FAMILIES

Superior Court                             Juvenile Matters

Memorandum filed October 4, 1999

---

[1] Thus entitled in accordance with the spirit and intent of General Statutes §§ 46b-124 and 45a-715 (b) and Practice Book § 35-5.

## I

## INTRODUCTION

SWIENTON, J. Cheryl Bridgeman and James Bridgeman (petitioners), in the above-captioned case entitled *Bridgeman* v. *Ragaglia*, filed a petition for a writ of habeas corpus dated April 27, 1999, seeking custody of their biological grandchild, Kristy L., born July 31, 1993. The respondent, the commissioner of children and families (commissioner), filed a motion to dismiss the habeas corpus action for lack of standing and failure to exhaust administrative remedies. The petitioners subsequently filed a motion to intervene and to access the minor child's records dated May 18, 1999, in the above-captioned case entitled *In re Kristy L.* The court heard argument on the motion to dismiss the writ of habeas corpus as well as argument on the motion to intervene and to access the minor child's records on June 16, 1999. Although the petition for a writ of habeas corpus was filed as a separate action from *In re Kristy L.*, the present consolidated memorandum of decision encompasses the court's decisions on both the motion to dismiss the habeas corpus petition and the motion to intervene and to access the minor child's records.

## II

## BACKGROUND[2]

The petitioner, Cheryl Bridgeman, is the mother of Kristy L.'s biological father, Joshua G., and the petitioner, James Bridgeman, is the stepfather of Kristy L.'s

[2] Neither the petitioners nor the commissioner requested the court to hear testimony at the hearing on the motion to dismiss and the motion to intervene and to access the minor child's records. In fact, the only party which sought to introduce any evidence at the hearing was the attorney for the child, who sought to introduce photographs of Kristy L. with her new preadoptive family. The facts as presented are taken from the petition. "The motion to

biological father. Kristy L. was born out of wedlock to Debby L. and Joshua G. on July 31, 1993, and resided with the petitioners for periods of times between September, 1993, and January, 1995. In January, 1995, Cheryl Bridgeman contacted the department of children and families (department) with concerns regarding the care and custody of Kristy L. while with her biological parents. On January 27, 1995, the court issued an order of temporary custody, granting temporary custody to the department and placing Kristy L. in foster care. Kristy L. was committed to the department on July 18, 1995. On June 11, 1997, the juvenile session of the Superior Court (*Teller, J.*) terminated the parental rights of Kristy L.'s biological parents, Deborah L. and Joshua G. The department was appointed the statutory parent for Kristy L. The petitioners did not seek intervention in any phase of the termination proceedings.

During the time Kristy L. resided with her first foster family, from approximately January, 1995 through January, 1998, the petitioners maintained a consistent visitation schedule, which included weekend and holiday visitation. Some time in early 1998, Kristy L. was removed from her first foster placement and placed in a different preadoptive foster home in Connecticut. When Kristy L. was placed in the second preadoptive home, the petitioners maintained contact, although the contact was curtailed at the request of the preadoptive foster parents.

Unfortunately, however, in March, 1999, the second preadoptive family informed the department that they no longer wished to adopt Kristy L. On May 10, 1999, Kristy L. was removed from the second home and was placed in a third preadoptive home. Her new primary

dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988).

caregivers are a same sex couple. The petitioners have many serious concerns over the appropriateness of the current placement and have turned to this court for relief.

## III

## MOTION TO DISMISS THE PETITION FOR HABEAS CORPUS

The petitioners brought the petition for habeas corpus pursuant to General Statutes §§ 46b-1 (8)[3] and 46b-56.[4] They cite *Doe* v. *Doe*, 244 Conn. 403, 710 A.2d 1297 (1998), as further authority for bringing the petition. The commissioner filed the motion to dismiss the petition citing lack of standing, failure to name a necessary party (the minor child and/or her attorney) and failure by the petitioners to exhaust their administrative remedies. The court will first address the motion to dismiss.

It is well settled law in Connecticut that a habeas corpus action is the correct procedural vehicle to determine the custody of a minor child. *Weidenbacher* v. *Duclos*, 234 Conn. 51, 60, 661 A.2d 988 (1995). A habeas corpus petition "is an equitable proceeding in which the trial court is called upon to decide, in the exercise of its sound discretion, the custodial placement which will be best for the child." (Internal quotation marks omitted.) Id., 61; *McGaffin* v. *Roberts*, 193 Conn. 393,

[3] General Statutes § 46b-1 provides in pertinent part: "Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving . . . (8) habeas corpus and other proceedings to determine the custody and visitation of children . . . ."

[4] General Statutes § 46b-56 provides in pertinent part: "(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation if it has jurisdiction . . . . Subject to the provisions of section 46b-56a, the court may assign the custody of any child to the parents jointly, to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable."

403, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); *Evans* v. *Santoro*, 6 Conn. App. 707, 709, 507 A.2d 1007 (1986). "Although the best interests of the child are the main concern of the court, that issue cannot be litigated by a party who lacks standing." *Weidenbacher* v. *Duclos*, 34 Conn. App. 129, 133, 640 A.2d 147, cert. granted, 230 Conn. 901, 644 A.2d 917 (1994). The court is first required to determine whether the person seeking the writ of habeas corpus has standing to initiate the action.

"Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties." *Nye* v. *Marcus*, 198 Conn. 138, 141, 502 A.2d 869 (1985). "It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [Further, standing is aptly described as] a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and rigorously represented." (Citations omitted; internal quotation marks omitted.) *Weidenbacher* v. *Duclos*, supra, 234 Conn. 61–62.

"[W]here a party does not rely upon any specific statute authorizing invocation of the judicial process his standing depends on whether he has a sufficient personal stake in the outcome of the controversy . . . ." (Internal quotation marks omitted.) *Orsi* v. *Senatore*, 31 Conn. App. 400, 414–15, 626 A.2d 750 (1993),

rev'd on other grounds, 230 Conn. 459, 645 A.2d 986 (1994).

Thus, the threshold question is whether the petitioners, mother and stepfather of the biological father whose parental rights have been terminated, have standing to institute a habeas action seeking custody of their son's biological child.

Our Supreme Court has placed limits on the class of persons who have standing to bring a habeas petition for custody. In *Doe* v. *Doe*, 163 Conn. 340, 307 A.2d 166 (1972), a petition for a writ of habeas corpus to obtain custody and visitation rights of two minor children was filed by the biological father of only one of the children. The Supreme Court denied him standing to bring the action as to the nonbiological child, even though he had extensive contact and emotional ties with the child. Id., 345. The decision in *Doe* has been interpreted by the courts in Connecticut as holding that " 'only parents or legal guardians of a child have standing to seek habeas corpus relief . . . .' " *Weidenbacher* v. *Duclos*, supra, 234 Conn. 63, quoting *Nye* v. *Marcus*, supra, 198 Conn. 143.

The commissioner also cites *Nye* to support her argument that only parents or legal guardians have standing to bring a petition for a writ of habeas corpus. In *Nye*, the petitioners were foster parents seeking a habeas corpus action to assert their own interest in the maintenance of their family relationship with the child. *Nye* v. *Marcus*, supra, 198 Conn. 144. The court noted with approval the holding in *Doe* that only parents or legal guardians of a child have standing to seek habeas corpus relief. Id., 143.

Important to the present case was the *Nye* court's denial of standing based upon the foster parents' assertion of the child's interest. The foster parents argued

that they should be the ones to assert the child's interests because she did not have any natural parents to represent her, and only they were capable of asserting these interests. The court rejected this contention holding that, as statutory parent for the child, the department of children and youth services (DCYS)[5] provides for her welfare, which includes acting in her best interests. Id., 145. The court dismissed the habeas corpus action because of the foster parents' lack of standing. Id. "To hold otherwise would open the door to any interested individual to litigate what is in the best interest of a foster child who is a candidate for adoption. It would also enable foster parents to delay the adoption of a child whenever they disagree with a placement decision of DCYS. This would undermine the adoption process in Connecticut by interfering with the performance of duties entrusted to DCYS by the legislature." Id., 145–46.

In reaction to the holding in *Nye*, the legislature conferred, by statute, standing on a certain class of foster parents of children placed by the department or approved adoptive parents where no common-law standing had been recognized. General Statutes § 52-466 (f).[6] Subsection (f) of the statute concerning habeas corpus actions (§ 52-466) was enacted as §§ 3 and 4 of Public Acts 1988, No. 88-332. "It was introduced as Amendment A to Senate Bill 288 . . . [which was described] as an additional safeguard for children about to be moved from foster homes where they were well known into other placements, related or not . . . .

---

[5] Effective July 1, 1993, the department of children and youth services (DCYS) was succeeded by the department of children and families. See General Statutes §§ 17a-1 (c) and 17a-2 (b).

[6] General Statutes § 52-466 (f) provides: "A foster parent or an approved adoptive parent shall have standing to make application for a writ of habeas corpus regarding the custody of a child currently or recently in his care for a continuous period of not less than ninety days in the case of a child under three years of age at the time of such application and not less than one hundred eighty days in the case of any other child."

[This] was to provide a forum where a foster parent could present to a court reasons why the exercise of the agency's discretion would not be in the child's best interests. An early attempt to broaden the amendment to give the habeas right not only to foster parents but also to 'Any person other than a foster parent' was unsuccessful." *Alfano* v. *Richardson*, Superior Court, judicial district of Hartford, Docket No. CV940539266 (August 28, 1995) (15 Conn. L. Rptr. 85, 89–90).

The commissioner argues that the petitioners lack standing under common law, they have no authority to bring such an action under statute, and, therefore, the petition should be dismissed.

The petitioners argue that § 52-466 (f) is not the only vehicle by which standing can be confirmed and claim standing under General Statutes §§ 46b-1 (8) and 46b-56. Section 46b-1 (8) provides that habeas corpus and other proceedings to determine the custody and visitation of children are matters within the jurisdiction of the Superior Court. This means merely that where other requirements are met, the Superior Court has jurisdiction to hear a petition for a writ of habeas corpus. The determination as to whether standing exists to bring such an action is crucial.

Section 46b-56 sets forth the powers of the Superior Court to enter into orders with respect to custody in family matters. Neither § 46b-1 (8) nor § 46b-56 confers parents (or a parent and stepparent)—acting as the grandparents—whose son's parental rights have been terminated, the authorization to bring a habeas corpus petition to seek custody of a grandchild.

The petitioners argue further that biological and adoptive families have a "liberty interest in the integrity of their family unit which is part of the fourteenth amendment's right to familial privacy." *Nye* v. *Marcus*, supra, 198 Conn. 144. They cite *Doe* v. *Doe*, 244 Conn.

403, 710 A.2d 1297 (1998), as emblematic of the Supreme Court's position concerning custody and, further, as support for the proposition that habeas actions are within the jurisdictional realm of § 46b-56.

*Doe* involved a custody dispute in a dissolution of marriage action. The child was conceived by alternate insemination between the husband and a surrogate mother. The Supreme Court reversed the trial court and held that the trial court had subject matter jurisdiction to adjudicate custody, even though the child was not a "child of the marriage" within the meaning of the marital dissolution statutes. Id., 406–407. The Supreme Court further interpreted § 46b-56 to grant the court power to determine custody in a habeas corpus case involving custody of a minor child. The court in dicta, recognizing the ever changing family unit stated: " '[t]raditional models of the nuclear family have come, in recent years, to be replaced by various configurations of parents, stepparents, adoptive parents and grandparents,' and we should not 'assume that the welfare of children is best served by a narrow definition of those whom we permit to continue to manifest their deep concern for a child's growth and development.' " Id., 442–43, quoting *Michaud* v. *Wawruck*, 209 Conn. 407, 415, 551 A.2d 738 (1988). The court, however, did not go so far as to enhance the rights of parties to bring a habeas action, which would grant the petitioners standing in the present matter. In her concurring and dissenting opinion, Justice Katz stated: "It is not my intent to open the door to all unrelated third parties who happen to feel a bond of affection with a child. Indeed, the factual context of this case, *limited as it is to dissolution, separation and annulment proceedings* pursuant to § 46b-56, substantially lessens this risk. Nor do I intend to invade or diminish the rights of the biological parent. Biology, however, is not always dispositive when we are making decisions regarding the care and

welfare of children." (Emphasis added.) *Doe* v. *Doe*, supra, 244 Conn. 485.

The threshold question remains: Whether the mother and stepfather of the biological father whose rights have been terminated have standing to institute a habeas action seeking determination of the son's biological child. The court neither finds any statutory authority for the granting of standing, nor can it find any basis for such a confirmation by case law. To accept the petitioners' argument that the language of *Doe* and the reasoning motivating the Supreme Court's decision in that case would provide the petitioners with the legal authority to maintain the habeas action would require that this court put aside one major concern, the termination of the biological parents' parental rights.[7]

At issue before the court is whether and to what extent the grandmother's rights are derivative of her son's parental rights, which have been terminated. The court finds that the grandparents' rights, to the extent they may be said to exist, are derivative of their son's or daughter's parental rights. "Because a grandparent's rights are only derivative, they may be contingent upon the establishment of paternity or maternity and are subject to divestment when parental rights are terminated." (Internal quotation marks omitted.) *Suster* v. *Arkansas Dept. of Human Services*, 314 Ark. 92, 96, 858 S.W.2d 12 (1993) (where grandmother sought to intervene in adoption of her granddaughter, whose parents' rights were terminated). "To create new, [independently] enforceable rights in grandparents could lead to results that would burden rather than enhance the welfare of children. Certainly prospective adoptive parents would be less inclined to assume that worthwhile role." Id. Permanency planning mandated by national and state public policy would be impossible.[7]

---

[7] See Adoption and Safe Families Act of 1997, 42 U.S.C. § 620 et seq.

Other jurisdictions have gone so far as to state that once parental rights of a child have been terminated as to a natural parent, the natural parent of such parent whose rights have been terminated is not entitled to continue visitation as a matter of right. Since the intent of a termination of parental rights is "to divest any tie between the parent and child" so that placement with an adoptive family could occur as quickly as possible, "little purpose would be served in continuing family ties between the grandparents and the child . . . ." *In re Interest of Ditter*, 212 Neb. 855, 857, 326 N.W.2d 675 (1982). "The termination proceedings completely and irrevocably severed all [the] parental bonds and relations with [the child], and the [S]upreme [C]ourt has recognized that termination of parental rights has the same effect on the relationship between members of the parents' families and the child as it has on the parent-child relationship." *Elgin & Carol W.* v. *Dept. of Health & Family Services*, 221 Wis. 2d 36, 47, 584 N.W.2d 195 (1998) (where maternal grandparents filed petitions for custody, guardianship and visitation following termination of parental rights of child's biological parents). The Wisconsin Appellate Court in *Elgin & Carol W.* upheld the trial court's dismissal of the petitions and the denial of the motion to intervene, stressing the need for finality. "[F]inality of the . . . court's decision is 'critical' . . . . The reasons are obvious: the longer the child remains in limbo, the longer it takes for him or her to shake the dislocation and trauma associated with an uncertain family situation. . . . [T]o survive a motion to dismiss and proceed to a trial that would throw the child and [the] adoptive parents right back into the very type of unsettling, traumatic atmosphere that should have come to closure long ago." (Citation omitted.) Id., 48; see also *In re Swing* v. *Garrison*, 112 N.C. App. 818, 822, 436 S.E.2d 895 (1993) (where grandparents lacked standing to contest department's placement of child after parental rights had been terminated).

The permanency and completeness of a termination of parental rights makes it the most severe consequence of a public intrusion into the parent child relationship. See *In re Baby Girl B.*, 224 Conn. 263, 618 A.2d 1 (1992); *Anonymous* v. *Norton,* 168 Conn. 421, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). It constitutes a direct interference by the state with the family's constitutionally protected right in the family unit. So, even though courts have been more cognizant of the ever changing family unit, it is imperative for this court to place strong emphasis on the fact that the parental rights of the petitioner's son have been terminated and to find that the grandparents no longer possess a legally protected right and, therefore, they lack standing to bring a habeas corpus action.

This may appear at first glance to be a most harsh result. It is justified by a policy that seeks to serve the best interests of the child by stressing the finality of the termination proceedings and by attempting to enfold them promptly in another permanent family relationship with new parents and new relatives. See *In re Adoption of Hess,* 386 Pa. Super. 301, 314, 562 A.2d 1375 (1989) (Wieand, J., dissenting) (grandparents were allowed full hearing on all evidence bearing on best interests of children in order to comply with Pennsylvania Adoption Act), aff'd, 530 Pa. 218, 608 A.2d 10 (1992). Without a specific statutory grant or directive by our highest courts, the grandparents, whose child's parental rights have been terminated, are legal strangers to the grandchild.

In the present case, the attorney for the minor child did not provide a memorandum to the court, however, at the hearing he stressed the importance of permanency for Kristy L. He also pointed out that the hearing on the motion to dismiss the habeas petition took place two years to the day of the date of the termination judgment.

The court, therefore, grants the commissioner's motion to dismiss due to the petitioners' lack of standing to bring the petition for a writ of habeas corpus.[8]

## IV

## MOTION TO INTERVENE

Having dismissed the habeas petition for lack of standing, the court moves next to the motion to intervene filed by the petitioners. Pursuant to General Statutes § 46b-57[9] and Practice Book § 26-1 (k) (3),[10] the petitioners' motion seeks intervention into the matter of *In re Kristy L.* In their reply to the commissioner's opposition to the motion to intervene and for access to records dated June 10, 1999, the petitioners also cite General Statutes § 46b-129 (c)[11] as statutory support for their motion to intervene.

Section 46b-57 provides for intervention of any *interested third party.* This court previously stated in part

---

[8] Having dismissed the habeas corpus petition for lack of standing, the court will not address the commissioner's other grounds for dismissal—failure to name a necessary party and failure to exhaust administrative remedies. Query, however, whether the petitioners have standing even to elect an administrative remedy.

[9] General Statutes § 46b-57 provides in pertinent part: "In any controversy before the Superior Court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or 51-348a, if there is any minor child of either or both parties, the court if it has jurisdiction . . . may allow any interested third party or parties to intervene upon motion."

[10] Practice Book § 26-1 (k) (3) provides in pertinent part: " 'Intervening party': Any person whose interest in the matter before the court is not of such a nature and kind as to entitle legal service as a prerequisite to the court's authority to adjudicate the matter pending before it but whose participation therein, *at the discretion of the judicial authority,* may promote the interests of justice. This definition may include but is not limited to any father or mother, natural, adoptive or putative, or any defacto custodian." (Emphasis added.)

[11] General Statutes § 46b-129 (c) provides in pertinent part: "In any proceeding *under this section,* any grandparent of the child may make a motion to intervene and the court shall grant such motion except for good cause shown. . . ." (Emphasis added.)

III of this opinion that the grandparents' rights are derivative of the parent's rights, and when the parent's rights are terminated, the grandparents no longer have a legally protected interest. *In re Jason P.*, 41 Conn. Sup. 23, 30, 549 A.2d 286 (1988) (paternal grandmother's motion to intervene as party in petitions for neglect and for termination of parental rights denied after her son, child's father, consented to termination of his parental rights). "[A] person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him, her, or it. The judgment to be rendered must affect the proposed intervenor's direct or personal rights, not those of another." (Internal quotation marks omitted.) *In re Baby Girl B.*, 224 Conn. 263, 275, 618 A.2d 1 (1992).

*In re Kristy L.* does not involve the custody of a minor child, per se, but the matter was initiated as a child protection action, which then proceeded into a termination of parental rights action. The court surmises that the grandparents are asking to intervene in order to seek custody of their grandchild, and are not attempting to intervene for the purpose of challenging the termination judgment.

The commissioner suggests in her memorandum that there is no present controversy before this court. The court rejects the commissioner's argument.

General Statutes § 17a-112 requires the department to present a plan to be reviewed by a court for any child whose care and custody the department has assumed in the wake of termination of the biological parents' parental rights "until the court determines that the adoption plan has become finalized." General Statutes § 17a-112 (o).

"It is undisputed that the legislature enacted [§ 17a-112] in order to take advantage of funding available to

the states upon compliance with the Federal Adoption Assistance and Child Welfare Act of 1980. 42 U.S.C. § 670 et seq. The federal act provide[s] the states with fiscal incentives to encourage a more active and systematic monitoring of children in the foster care system." (Internal quotation marks omitted.) *In re Baby Girl B.*, supra, 224 Conn. 289.

These hearings are simply not a rubber stamp by the court as to the effort, or lack of effort, by the department as to the permanency and placement of children in preadoption proceedings. The guardian or statutory parent, for the most part the department, files a report on the implementation of a case plan as to the child. These hearings are attended by the attorney for the child, and counsel has input as to whether the court will approve the plan or require the department to take other action. The plan is not always adoption for the child, as in some cases a suitable adoptive parent or parents cannot be found and the plan is long-term foster care or independent living. The case remains open and the court continues to review the case until such time as any proposed adoption plan has become finalized.

The petitioners cite General Statutes § 46b-129 (c) as the statutory authority allowing them intervention into the matter of *In re Kristy L.* Section 46b-129 does not govern termination of parental rights petitions and, therefore, subsection (c) of that statute is not applicable. See General Statutes § 17a-112.

"The dispositive issue . . . is not whether the [grandparent] should [be] allowed to intervene, permissively or as of right, but whether the [grandparent has] standing to file the motion, where [the] purpose in doing so [is] not to affect the result of the termination trial, but to effect an adoption, or custody for [them]." *In re Ryan V.*, 46 Conn. App. 69, 72, 698 A.2d 371 (1997) (where grandmother sought intervention in termination

proceedings, Appellate Court did not reach question of whether permissive intervention or intervention as of matter of right was applicable and affirmed trial court's decision, based upon grandmother's lack of standing, dismissing her motion to intervene).

Assuming, arguendo, that the petitioners have standing to bring a motion to intervene into the matter of *In re Kristy L.*, the court must find that intervention either as a matter of right or as permissive intervention.

Under Connecticut law there are two types of intervention: intervention as a matter of right and permissive intervention. *Horton* v. *Meskill*, 187 Conn. 187, 191–92, 445 A.2d 579 (1982). The standard for intervention as a matter of right is an exacting one where the movant's interest is of such direct and immediate character that the movant will either gain or lose by the direct legal operation and effect of the judgment. Id., 191. For juvenile proceedings, interventions as a matter of right are governed by Practice Book § 26-1 (k) (3); all other persons desiring to participate are allowed to "at the discretion of the judicial authority . . . ." Practice Book § 26-1 (k) (3).

*Horton* v. *Meskill*, supra, 187 Conn. 197, provides the controlling criteria for this court's determination for permissive intervention. Permissive intervention rests on several factors such as "the timeliness of the intervention, the proposed intervenor's interests in the controversy, the adequacy of representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing parties that the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court." Id.

The matter of *In re Kristy L.* began in January, 1995, with the granting of an order of temporary custody. During the next several years, the petitioners never sought any legal intervention in any of the proceedings

before this court—order of temporary custody, neglect and termination of parental rights. The first time they sought any court involvement was in April, 1999, with the filing of their petition for habeas corpus and their motion to intervene; this was four years after the initial proceeding and almost two years to the day of the date of the termination of parental rights judgment. Even when intervention is a matter of right, the right will be lost, "not merely weakened, if it is not exercised in a timely fashion." Id., 194. Allowing the grandmother and stepgrandfather to intervene here will delay the proceedings and cause prejudice to the existing parties. The present motion is untimely and would unduly delay the proceedings.

The third consideration is whether the petitioners' interests would be adequately represented by other parties. The petitioners, through their motion and their memorandum, point out to the court that they have grave concern for the appropriateness of Kristy L.'s placement and for her well-being. The court finds, however, that the best interests of Kristy L. will be adequately considered through the department, the statutory parent, her attorney and the court, which will continue to review the matter until Kristy L.'s finalized adoption.

The one consideration that might be considered as favoring intervention is the proposed intervenors' interest in the controversy. The petitioners argue that they, as the paternal grandparents, have a recognized interest in the future living arrangements of their granddaughter or, at the very least, have a recognized interest in maintaining visitation with their granddaughter. The rights of the biological grandparents were also terminated when parental rights were terminated. See *Faust* v. *Messinger*, 345 Pa. Super. 155, 160, 497 A.2d 1351 (1985) (grandmother's right to visitation terminated by adoption of grandchild); see also *J. & E.* v. *M. & F.*, 157 N.J.

Super. 478, 494, 385 A.2d 240, cert. denied, 77 N.J. 490, 391 A.2d 504 (1978) (grandparent's rights to custody or even to visitation can rise no higher than those of natural parent). The interest of the paternal grandparents is insufficient in law to warrant their participation in the present controversy. *In re Jason P.*, supra, 41 Conn. Sup. 23. The paternal grandparents' motion to intervene, therefore, is denied.

## V

## MOTION FOR ACCESS TO CHILD'S RECORDS

Finally, by motion, the petitioners seek access to Kristy L.'s records, as defined by General Statutes § 17a-28 (a) (5),[12] from the date of the department's involvement to the present. The statute provides that department records are confidential and shall not be disclosed except under certain enumerated exceptions. The petitioners point to § 17a-28 (m) as the exception which would allow them access to the department's records. That exception, however, provides that "any person, regardless of age . . . shall have the right of access to any records made, maintained or kept on file by the department, whether or not such records are required by law or by any rule or regulation, when *those records pertain to or contain information concerning the person seeking access thereto* . . . ." (Emphasis added.) General Statutes § 17a-28 (m). This exception does not allow for the petitioners to gain access to the records they are seeking, namely the records regarding Kristy L. The petitioners are correct in pointing out that under § 17a-28, they are entitled to any records maintained by

---

[12] General Statutes § 17a-28 (a) (5) provides: " 'Records' means information created or obtained in connection with the department's child protection activities or activities related to a child while in the care or custody of the department, including information in the registry of reports to be maintained by the commissioner pursuant to section 17a-101k, provided records which are not created by the department are not subject to disclosure, except as provided pursuant to subsection (f), (*l*) or (n) of this section . . . ."

the department concerning the petitioners themselves. They are not allowed access to the records of Kristy L. under this exception. The attorney for the minor child stated at the hearing his objection to the petitioners' access of Kristy L.'s records.

## VI

## CONCLUSION AND ORDER

The petiton for a writ of habeas corpus in the case entitled *Bridgeman* v. *Ragaglia*, is hereby dismissed. The petitioners' motion to intervene in the case entitled *In re Kristy L.* is denied. The petitioners' motion for access to the minor child's records is granted *only* as to any records kept by the department concerning the paternal grandmother and paternal stepgrandfather.

It is so ordered.