MEMORANDUM OF DECISION
Cheryl B. and James B., hereinafter referred to as the petitioners, in case No. H12-CP99-006883-A filed a petition for a writ of habeas corpus dated April 27, 1999, seeking custody of their biological grandchild, Kristy L., born July 1993. The commissioner of the department of children and families (alternately the commissioner or DCF) filed a motion to dismiss the habeas corpus action for lack of standing and failure to exhaust administrative remedies. The petitioners subsequently filed a motion to intervene and to access minor child's records dated May 18, 1999, in case. The court heard argument on the motion to dismiss the writ of habeas corpus as well as argument on the motion to intervene and to access minor child's records on June 16, 1999. Although the petition for writ of habeas corpus was filed as a separate action from In re Kristy L., this memorandum of decision encompasses the decisions on both the motion to dismiss the habeas corpus petition and the motion to intervene and to access the child's records.
 I BACKGROUND[2]
The petitioner, Cheryl B., is the mother of Kristy L.'s biological father, Joshua G. and the petitioner, James B., is the step-father of Kristy L.'s biological father. Kristy L. was born out of wedlock to Debby L. and Joshua G. on July 1993 and resided with the petitioners for periods of times between September 1993 and January 1995. In January 1995, petitioner Cheryl B. contacted DCF with concerns regarding the care and custody of Kristy L. while with her biological parents. On January 27, 1995, the court issued an order of temporary custody, granting temporary custody to DCF and placed Kristy in foster care. Kristy was committed to DCF on July 18, 1995. On June 11, 1997, the Juvenile Session of the Superior Court (Teller, J.) terminated the parental rights of Kristy L.'s biological parents, Deborah L. and Joshua G. DCF was appointed the statutory parent for Kristy L. The petitioners did not seek intervention in any phase of the termination proceedings.
During the time Kristy L. resided with her first foster family, from CT Page 14367-s approximately January 1995 through January 1998, the petitioners maintained a consistent visitation schedule which included weekend and holiday visitation. (Petition, para. 8). Some time in early 1998, Kristy L. was removed from her first foster placement and placed in a different pre-adoptive foster home in Connecticut. When Kristy was placed in the second pre-adoptive home, the petitioners maintained contact, although the contact was curtailed at the request of the pre-adoptive foster parents. (Petition, para. 10).
Unfortunately, however, in March 1999, the second pre-adoptive family informed DCF that they no longer wished to adopt Kristy. On May 10, 1999, Kristy was removed from the second home, and Kristy L. was placed in a third pre-adoptive home. Her new primary care givers are a same sex couple. The petitioners have many serious concerns over the appropriateness of the current placement and turned to this court for relief.
 II MOTION TO DISMISS THE PETITION FOR HABEAS CORPUS
The petitioners brought the petition for habeas corpus pursuant to General Statutes §§ 46b-1 (8)[3] and 46b-56.[4] They cite Doe v.Doe, 244 Conn. 403, 710 A.2d 1297 (1998) as further authority for the petition being brought. The commissioner filed the motion to dismiss the petition citing lack of standing, failure to name a necessary party (the minor child and/or her attorney) and failure by the petitioners to exhaust their administrative remedies. The court will first address the motion to dismiss.
It is well settled in Connecticut that a habeas corpus action is the correct procedural vehicle to determine the custody of a minor child.Weidenbacher v. Duclos, 234 Conn. 51, 60, 661 A.2d 988 (1995). A habeas corpus petition "is an equitable proceeding in which the trial court is called upon to decide, in the exercise of its sound discretion, the custodial placement which will be best for the child." (Citations omitted) Id., 61; Evans v. Santoro, 6 Conn. App. 707, 709, 507 A.2d 7
(1986); McGaffin v. Roberts, 193 Conn. 403, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 813 (1985). "Although the best interests of the child are the main concern of the court, that issue cannot be litigated by a party who lacks standing." Weidenbacherv. Duclos, supra, 234 Conn. 61. The court is first required to determine whether the person seeking the writ of habeas corpus has standing to initiate the action. CT Page 14367-t
"Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties." Nye v. Marcus, 198 Conn. 138, 141, 502 A.2d 869
(1985). "It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. Ardmare Construction Co. v. Freedman, 191 Conn. 497, 501,467 A.2d 674 (1983). Further, standing is aptly described as a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions that may affect the rights of others are forged in hot controversy with each view fairly and rigorously represented . . ." Weidenbacher v.Duclos, supra, 234 Conn. 62.
"[W]here a party does not rely upon any specific statute authorizing invocation of the judicial process his standing depends on whether he has a sufficient personal stake in the outcome of the controversy . . . (Internal quotation marks omitted.) Orsi v. Senatore, 31 Conn. App. 400,414-415, 616 A.2d 194 (1993), quoting Belford v. New Haven, 170 Conn. 46,54, 364 A.2d 194 (1975); rev'd on other grounds, Manchester EnvironmentalCoalition v. Stockton, 184 Conn. 51, 57 n. 7, 441 A.2d 68 (1981).
Thus, the threshold questions is whether the petitioners, mother and stepfather of the biological father whose parental rights have been terminated, have standing to institute a habeas action seeking custody of the son's biological child.
The Supreme Court has placed limits on the class of persons who have standing to bring a habeas petition for custody. In Doe v. Doe,163 Conn. 340, 307 A.2d 146 (1972) a petition for a writ of habeas corpus to obtain custody and visitation rights of two minor children was filed by the biological father of only one of the children. The Supreme Court denied him standing to bring the action as to the non-biological child, even though he had extensive contact and emotional ties with the child. The decision in Doe has been interpreted by the courts in Connecticut as holding that" "only parents or legal guardians of a child have standing to seek habeas corpus relief.'" Nye v. Marcus, supra 198 Conn. 143.Weidenbacher v. Duclos, supra 234 Conn. 62.
The commissioner also cites Nye to support her argument that only CT Page 14367-u parents or legal guardian have standing to bring a petition for a writ of habeas corpus. In Nye, the petitioners were foster parents seeking a habeas corpus action to assert their own interest in the maintenance of their family relationship with the child. Id., 144. The court noted with approval the holding in Doe that only parents or legal guardians of a child have standing to seek habeas corpus relief. Id., 143.
Important to the case at hand was the Nye court's denial of standing based upon the foster parents' assertion of the child's interest. The foster parents argued that they should be the ones to assert the child's interests because she did not have any natural parents to represent her, and only they were capable of asserting these interest. The court rejected this contention holding that as statutory parent for the child, DCYS[5] provides for her welfare, which includes acting in her best interests. Id., 145. The court dismissed the habeas corpus action because of foster parents' lack of standing. "To hold otherwise would open the door to any interested individual to litigate what is in the best interests of a foster child who is a candidate for adoption. It would also enable foster parents to delay the adoption of a child whenever they disagree with a placement decision of DCYS. This would undermine the adoption process in Connecticut by interfering with the performance of duties entrusted to DCYS by the legislature." Id., 145-146.
In reaction to the holding in Nye, the legislature conferred by statute standing on a certain class of foster parents of children placed by DCF or approved adoptive parents where no common law standing had been recognized. General Statutes § 52-466 (f).[6] Subsection (f) of the statute concerning habeas corpus action (§ 52-466) was enacted as Sections 3 and 4 of P.A. 88-332. Amendment A was introduced as an additional safeguard for children about to be moved from foster homes where they were well known into other placements, related or not. This provides a forum where a foster parent can present to a court reasons why the exercise of the agency's discretion would not be in the child's best interests. An attempt to broaden the amendment to give the habeas right not only to foster parents but also to "any person other than a foster parent" was unsuccessful. (1988 House Proceedings); Alfano v. Richardson,
Superior Court, J.D. of Hartford at Hartford, No. CV 94-0539266 (August 28, 1995).
The commissioner argues that the petitioners lack standing under common law and have no authority to bring such an action under statute and the petition should be dismissed.
The petitioners argue that § 52-466 (f) is not the only vehicle in CT Page 14367-v which standing can be confirmed and claim standing under General Statutes §§ 46b-1 (8) and 46b-56 (Petition, Para. 12). Section 46b-1 (8) provides that habeas corpus and other proceedings to determine the custody and visitation of children are matters within the jurisdiction of the Superior Court. This means merely that where other requirements are met the Superior Court has jurisdiction to hear a petition for writ of habeas corpus. The determination as to whether standing exists to bring such an action is crucial.
Section 46b-56 sets forth the powers of the Superior Court to enter into orders with respect to custody in family matters. Neither statute confers parents (or a parent and stepparent) — acting as the grandparents — whose son's parental rights have been terminated, the authorization to bring a habeas corpus petition to seek custody of a grandchild.
The petitioners further argue that biological and adoptive families have a "liberty interest in the integrity of their family unit which is part of the Fourteenth Amendment's right to privacy." Nye v. Marcus,
supra, 198 Conn. 144 (1985). They cite Doe v. Doe, 244 Conn. 403,710 A.2d 1297 (1998) as emblematic of the Supreme Court's position concerning custody and further standing for the proposition that habeas actions are within the jurisdictional realm of § 46b-56.
Doe — 1998 involved a custody dispute in a dissolution of marriage action. The child was conceived by alternate insemination between the husband and a surrogate mother. The Supreme Court reversed the trial court and held that the trial court had subject matter jurisdiction to adjudicate custody, even though the child was not a "child of the marriage" within the meaning of the marital dissolution statutes. Id., 442. The Supreme Court further interpreted § 46b-56 to grant the court power to determine custody in a habeas corpus case involving custody of a minor child. The court in dicta, recognizing the ever changing family unit stated: "Traditional models of the nuclear family have come, in recent years, to be replaced by various configurations of parents, stepparents, adoptive parents and grandparents. We are not prepared to assume that the welfare of children is best served by a narrow definition of those whom we permit to manifest their deep concern for a child's growth and development." Id., at 442-443, quoting Michaud v. Wawruck, 209 Conn. 407, 415, 551 A.2d 738
(1988). However, the court did not go so far as to enhance the rights of parties to bring a habeas action which would grant the petitioners in this matter standing. Justice Katz, concurring in part and dissenting in part stated: "It is not my intent to open the door to all unrelated third CT Page 14367-w parties who happen to feel a bond of affection with a child. Indeed, the factual context of this case, limited as it is to dissolution, separationand annulment proceedings pursuant to § 46b-56, substantially lessens this risk. Nor do I intend to invade of diminish the rights of the biological parent. Biology, however, is not always dispositive when we are making decision regarding the care and welfare of children." (Emphasis added.) Id., 485.
The threshold question remains: whether the mother and stepfather of the biological father whose rights have been terminated have standing to institute a habeas action seeking determination of the son's biological child. The court does not find any statutory authority for the granting of standing, nor can it find that any basis for such a confirmation by case law. To accept the petitioners' argument that the language of Due
(1998) and the reasoning motivating the Supreme Court's decision in that case would provide the petitioners with the legal authority to maintain the habeas action would require that this court put aside one major concern, the termination of the biological parents' parental rights.
An issue before the court is whether and to what extent the grandmother's rights are derivative of her son's parental rights which have been terminated. The court finds that the grandparents rights, to the extent they may be said to exist, are derivative of their son's or daughter's parental rights. Because a grandparent's rights are only derivative, they are contingent upon the establishment of paternity or maternity and are subject to divestment when parental rights are terminated. (Citations omitted.) Suster v. Ark. Dept. of Human Services,314 Ark. 92, 96, 858 S.W.2d 122 (1993) (where grandmother sought to intervene in the adoption of her granddaughter whose parents' rights were terminated). To create any new, independently enforceable rights in grandparents could lead to results that would burden rather than enhance the welfare of children. Prospective adoptive parents would be less inclined to assume that worthwhile role. Id., 96. Permanency planning mandated by national and state public policy would be impossible.[7]
Other jurisdictions have gone so far as to state that once parental rights of a child have been terminated as to a natural parent, the natural parent of such parent whose rights have been terminated are not entitled to continue visitation as a matter of right. "We reasoned that since the intent of a termination of parental rights was to divest any tie between the parent and child so that placement with an adoptive family could occur as quickly as possible, little purpose would be served in continuing family ties with the grandparents and the child." In reInterest of Ditter, 212 Neb. 855, 859, 326 N.W.2d 675, 677 (1982). "The CT Page 14367-x termination proceedings completely and irrevocably severed all [the] parental bonds and relations with [the child], and the supreme court has recognized that termination of parental rights has the same effect on the relationship between members of the parents' families and the child as it has on the parent-child relationship." In re Jeffrey A.W., 221 Wis.2d 36,584 N.W.2d 195, 200 (Wis.App. 1998) (where maternal grandparents filed petitions for custody, guardianship and visitation following termination of parental rights of the child's biological parents). The appellate court upheld the trial court's dismissal of the petitions and the denial of the motion to intervene, stressing the need for finality. ". . . finality of the . . . court's decision is critical . . . The reasons are obvious: the longer the child remains in limbo, the longer it takes for him or her to shake the dislocation and trauma associated with an uncertain family situation. . . . [T]o survive a motion to dismiss and proceed to a trial that would throw the child and [the] adoptive parents right back into the very type of unsettling, traumatic atmosphere that should have come to closure long ago." Id., 200. See, also: Swine v.Garrison, 436 S.E.2d 895 (N.C.App. 1993) (where grandparents lacked standing to contest the departments placement of the child after parental rights had been terminated).
The permanency and completeness of a termination of parental rights makes it the most severe consequence of a public intrusion into the parent child relationship. Anonymous v. Noton, 168 Conn. 421, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S.Ct. 294, 46 L.Ed.2d 268 (1975); In reBaby Girl B., 224 Conn. 263, 618 A.2d 1 (1992). It constitutes a direct interference by the state with the family's constitutionally protected right in the family unit. So even though courts have been more cognizant of the ever-changing family unit, it is imperative for this court to place such strong emphasis on the fact that the parental rights of petitioner's son have been terminated and find the grandparents' no longer possess a legally protected right and therefore lack standing to bring a habeas corpus action.
This may appear at first glance to be the most harsh results. It is justified by a policy which seeks to serve the best interests of the child by stressing the finality of the termination proceedings and by attempting to promptly enfold them in another permanent family relationship with new parents and new relatives. See, In re Adoption ofHess, 562 A.2d 1375 (Pa.Super. 1989) (Wieand, J., dissenting) (grandparents were allowed a full hearing on all evidence bearing on best interest of children in order to comply with the Pennsylvania Adoption Act). Without a specific statutory grant or directive by our highest courts, the grandparents, whose child's parental rights have been CT Page 14367-y terminated, are legal strangers to the grandchild.
The attorney for the child did not provide a memorandum to the court, however, at the hearing he stressed the importance of permanency for Kristy. He also pointed out that the hearing on the motion to dismiss the habeas petition was two years to the day of the termination judgment.
The court grants the motion to dismiss the writ of habeas corpus due to the petitioners lack of standing to bring the petition for habeas corpus.[8]
 III MOTION TO INTERVENE
Having dismissed the habeas petition for lack of standing the court moves to the motion to intervene filed by James and Cheryl B. The motion seeks, pursuant to General Statutes § 46b-57[9] as well as Practice Book § 26-1(k)(3)[10] intervention into the matter of In re Kristy L. The petitioners in their reply to respondent's opposition to motion to intervene and for access to records dated June 10, 1999 ("Memorandum") also cites as statutory support for their motion to intervene General Statutes § 46b-129 (c).[11]
Section 46b-57 provides for intervention of any interested thirdparty. The court has previously stated in this memorandum that the grandparents' rights are derivative of the parent's rights, and when the parent's rights are terminated, the grandparents no longer have a legally protected interest. In re Jason P., 41 Conn. Sup. 23, 549 A.2d 286 (1988) (paternal grandmother's motion to intervene as a party in petitions for neglect and for termination of parental rights after her son, the child's father, consented to a termination of his parental rights denied). "A person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him, her, or it. The judgment to be rendered must affect the proposed intervenor's direct or personal rights, not those of another." (Citation omitted.) In re Baby Girl B., 224 Conn. 263, 275, 618 A.2d 1
(1992).
The matter of In re Kristy L. does not involve the custody of a minor child, per se, but was initiated as a child protection action which then proceeded into a termination of parental rights action. The court surmises that the grandparents are asking to intervene in order to seek custody of their grandchild and are not attempting to intervene for the purposes of challenging the termination judgment. CT Page 14367-z
The commissioner suggests in her memorandum that there is no present controversy before this court. The court rejects the commissioner's argument.
General Statutes § 17a-112 (h) (formally Sec. 17a-112 (i)) requires DCF to present a plan to be reviewed by a court for any child whose care and custody the department has assumed in the wake of termination of the biological parents' parental rights "until such time as any proposed adoption plan has become finalized." § 17a-112 (h).
"It has been undisputed that the legislature enacted Section 17a-112
(h) in order to take advantage of funding available to states upon compliance with the Federal Adoption Assistance and Child Welfare Act of 1980. 42 U.S.C. § 670 et.seq. The act provide[s] the states with fiscal incentives to encourage a more active and systematic monitoring of child in the foster care system." (Internal quotation marks omitted.) Inre Baby Girl B., supra, 224 Conn. 289.
These hearings are simply not a rubber stamp by the court as to the efforts or lack of efforts by DCF as to the permanency and placement of children in pre-adoption proceedings. The guardian or statutory parent, for the most part DCF, files a report on the implementation of a case plan as to the child. These hearings are attended by the attorney for the child, and he/she has input as to whether the court will approve the plan or require DCF to take other action. The plan is not always adoption for the child, as in some cases a suitable adoptive parent[s] cannot be found and the plan is long-term foster care or independent living. The case remains open and the court continues to review the case until such times as any proposed adoption plan has become finalized.
The petitioners cite General Statutes § 46b-129 (c) as the statutory authority allowing them intervention into the matter of In re Kristy L. Section 46b-129 does not govern termination of parental rights petitions and therefore subparagraph (c) is not applicable. See, General Statutes § 17a-112 — Termination of parental rights of child committed to commissioner.
"The dispositive issue . . . is not whether the grand[parent] should [be] allowed to intervene, permissively or as of right, but whether the grand[parent] [has] standing to file the motion, whether [the] purpose in doing so [is] not to affect the result of the termination trial, but to effect an adoption or custody for herself." In re Ryan V.,46 Conn. App. 69, 72, 698 A.2d 317 (1997), (where grandmother sought CT Page 14367-ba intervention in termination proceedings — the court did not reach the question of whether permissive intervention or intervention as of a matter of right was applicable and dismissed based upon grandmother's lack of standing).
Assuming arguendo that the movants have standing to bring a motion to intervene into the matter of In re Kristy L., the court must find that intervention as a matter of right or permissive intervention.
Under Connecticut law there are two types of intervention: intervention as a matter of right and permissive intervention. Horton v. Meskill,187 Conn. 187, 445 A.2d 579 (1982). The standard for intervention as matter of right is an exacting one where the movant's interest is of such direct and immediate character that the movant will either gain or lose by the direct legal operation and effect of the judgment. Id., 191. For juvenile proceedings, interventions as a matter of right are governed by Practice Book § 26-1(k)(3). All other persons desiring to participate are allowed to "at the discretion of the judicial authority."
Horton v. Meskill, supra., 187 Conn. 197, provides the controlling criteria for this court's determination for permissive intervention. Permissive intervention rests on several factors such as the timeliness of the intervention, the proposed intervenor's interests in the controversy, the adequacy of representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing parties that the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court. Id., 197.
The case of In re Kristy L. began in January of 1995 with the granting of an order of temporary custody. The petitioners during the next several years never sought any legal intervention in the any of the proceedings before this court — order of temporary custody, neglect and termination of parental rights. The first time they sought any court involvement was in April 1999 with the filing of the petition for habeas corpus and this motion to intervene four years after the initial proceeding and almost two years to the date of the termination of parental rights judgment. Even when intervention is a matter of right, the right will be lost, not merely weakened, if it is not exercised in a timely fashion. Id., 193-194. Allowing the grandmother and step-grandfather to intervene will delay the proceedings and cause prejudice to the existing parties. The present motion is untimely and would unduly delay the proceedings. CT Page 14367-bb
The third consideration is whether the petitioners' interests would be adequately represented by other parties. The petitioners through their motion and their memorandum point out to the court that they have grave concern regarding the appropriateness of Kristy's placement and for her well-being. However, the court finds that the best interests of Kristy L. will be adequately considered through the statutory parent, DCF, the attorney for the minor child, and the court, which will continue to review the matter until Kristy's finalized adoption.
The one consideration which might be considered as favoring intervention is the proposed intervenors' interest in the controversy. The petitioners argue that they as the paternal grandparents have a recognized interest in the future living arrangements of their granddaughter or at the very least, have a recognized interest in maintaining visitation with their granddaughter. The rights of the biological grandparents were also terminated when parental rights were terminated. See: Faust v. Messinger, 345 Pa. Super. 155, 497 A.2d 1351
(1985) (grandmother's right to visitation terminated by adoption of grandchild). See also, J E. v. M. F., 157 N.J. Super. 478, 385 A.2d 240
(1978), cert. denied, 77 N.J. 490, 391 A.2d 504 (grandparent's right to custody or even to visitation can rise no higher than those of a natural parent). The interest of the paternal grandparents is insufficient in law to warrant their participation in the present controversy. In re JasonP., supra, 41 Conn. Sup. 23. The paternal grandparents's motion to intervene is denied.
 IV MOTION FOR ACCESS TO CHILD'S RECORDS
Finally, the petitioners by motion seek access to Kristy L.'s records as defined by General Statutes § 17a-28 (5)[12] from the date of the Department of Children and Families involvement to the present. The statute provides that DCF records are confidential and shall not be disclosed except under certain enumerated exceptions. The petitioners point to General Statutes § 17a-28 (m) as the exception which would allow them access to DCF records. That exception, however, provides that "any person, regardless of age . . . shall have the rights of access to any records made, maintained, or kept on file by the department, whether or not such records are required by law or by any rule or regulation, when those records pertain to or contain information concerning theperson seeking access thereto . . ." This exception does not allow for the petitioners to gain access to the records they are seeking, namely the CT Page 14367-bc records regarding Kristy L. The petitioners are correct in pointing out that under said statute, petitioners are entitled to any records maintained by DCF concerning the petitioners themselves. They are not allowed access to the records of Kristy L. under this exception. The attorney for the child stated at the hearing his objection to the movants access of Kristy's records.
ORDER:
The writ of habeas corpus in case no. H12-CP99-006338-A is hereby dismissed. The motion to intervene in case no. is denied. The motion for access to child's records is granted only as to any records kept by DCF concerning the paternal grandmother and paternal step-grandfather.
So ordered.
By the court
Swienton, J.